2008 OK 39

**STATE of Oklahoma ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**James E. GOLDEN, Jr., Respondent.**

**SCBD No. 5386.**

Supreme Court of Oklahoma.

April 22, 2008.

As Amended on Denial of Rehearing Jan. 22, 2009.

Loraine Dillinder Farabow, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Gary A. Rife, Rife & Walters, Oklahoma City, Oklahoma, for Respondent.

TAYLOR, J.

¶1 The issues in this original proceeding for attorney discipline are: (1) whether the record before this Court is sufficient for review of the charges against the respondent and for disposition, and (2) what is the appropriate discipline. We find the record is sufficient for a meaningful review and the appropriate discipline is disbarment.

## I. BACKGROUND

¶2 This disciplinary proceeding is before this Court pursuant to Rule 7 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S.2001, ch. 1, app. 1–A. Rule 7 provides for summary disciplinary proceedings before this Court. Rules 7.1 through 7.5 deal specifically with discipline of a lawyer who has been convicted of a crime. Pursuant to Rule 7.2, the complainant, Oklahoma Bar Association (OBA), by a November 19, 2007 letter, notified this Court that respondent, James E. Golden, Jr. (Golden), had been convicted of the crime of misprision of a felony, 18 U.S.C. § 4 (2004), in the United States District Court, Southern District of Iowa. The federal misprision of a felony statute provides:

Whoever, having knowledge of the actual commission of a felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United States, shall be fined under this title or imprisoned not more than three years, or both.

*Id.* Materials attached to the letter included the superseding indictment, a charging information, a judgment, and an amended judgment.

¶3 Golden entered into a plea agreement and pled guilty to the crime of misprision of a felony in exchange for the government's agreement not to prosecute other charges in the superseding indictment. Golden was given a three-year probated sentence, including five months of supervised curfew; was ordered to pay restitution of $5,719,340.22; and was ordered to pay a special assessment of $100.00 to the United States. Golden waived his right to appeal the conviction and sentence. Under 7.2 of the RGDP, the documents submitted by the OBA constitute the charge and are "conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline...."

¶4 Deeming the conviction to facially demonstrate Golden's unfitness to practice law, this Court suspended Golden from the practice of law on December 3, 2007. *See* RGDP at rule 7.3. In the same order, Golden was directed to show cause why the interim suspension should be set aside, to show cause why final discipline should not be imposed, to request a hearing if one was desired, to file a brief, and to present evidence tending to mitigate the severity of the discipline. Golden waived his right to contest the interim suspension and has not requested a hearing. He did file a brief, evidentiary materials, and materials under seal. In his brief, Golden advocates that he should be suspended for only two years. The OBA filed a brief in support of final imposition of discipline which set forth authority strongly supporting Golden's disbarment.

## II. FACTS

¶5 From the judgment, plea agreement, and Golden's own plea of guilty and other admissions, he actively participated in health care fraud cover-up. According to the plea agreement, Golden knew that Floyd W. Seibert, Golden's client and a codefendant in the underlying criminal case, engaged in a fraudulent scheme to transfer money from his employees' benefit trust (pension fund) to Seibert's companies, some of which provide Medicare services. Seibert claimed interest on the transferred money as part of the expenses of his companies, and as exhibited by other evidentiary materials, inflated the amount of his Medicare reimbursements. Seibert pled guilty to health care fraud. The money transferred from the employees' pension fund has not been repaid and is part of the $5,719,340.22 restitution. Seibert used an alias to hide some of the fraudulent transactions in his scheme to defraud his employ-

ees' of their pensions and to defraud the government.

¶ 6 Golden actively participated in Seibert's scheme by concealing Seibert's fraudulent transactions when he wrote letters to Seibert addressed to his alias and when he prepared documents memorializing the bonds and transfers. The sentencing judge characterized Golden's participation in the fraudulent scheme in this way: "It means that I am assessing conduct that assists in covering up the fraudulent conduct and that assists in creating vehicles that allow the fraudulent conduct to proceed and particularly creating vehicles that allow Mr. Seibert to do things that place people that have trusted him in peril."

¶ 7 Golden minimizes his role in the scheme to defraud Seibert's employees and the government. Golden submits that he merely documented completed transactions and that auditors should have been able to detect the fraudulent transactions. He also submits that at the time of his misconduct, Seibert's fraudulent acts had been accomplished. Contrary to Golden's depiction of his involvement, the crime of misprision of a felony requires active concealment, i.e. an affirmative act. *United States v. Goldberg,* 862 F.2d 101, 104–105 (6th Cir.1988); *see Branzburg v. Hayes,* 408 U.S. 665, 696 n. 36, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972) (noting that the federal misprision of a felony statute has been construed to require knowledge of the felony and an affirmative act of concealment). By pleading guilty to misprision of a felony, Golden has admitted his participation in the fraud was more than passive. He has admitted his affirmative acts to conceal the fraudulent scheme. Golden's admissions state that he knew about the pension fund transfers, that he knew the transfers were used to defraud the government, and that he concealed the transfers by writing letters addressed to Seibert's alias and by preparing paperwork memorializing the transfers.

### III. MITIGATION AND ENHANCEMENT

¶ 8 Golden submits several factors mitigate the discipline which should be imposed: (1) acceptance of responsibility and acknowledg-

ment of the consequences of his actions, (2) cooperation with the government in its case against Seibert, (3) imposition of a probated sentence, (4) lack of intent to personally gain from the wrongful acts, (5) his record and public service, and (6) the character letters from the sentencing phase of the criminal proceeding. Golden would have this Court believe that his acts were an aberration, a momentary lapse of judgment, and not indicative of his true character.

¶ 9 We do not agree that all the factors proposed by Golden are mitigating. Further any potential mitigation is offset by factors for enhancement. Golden's cooperation in the government's case against Seibert was compelled by the plea agreement. While Golden contends that he did not intend to personally gain from his wrongful acts, they were done in his capacity as an attorney, and he was presumably paid for actively concealing the fraudulent scheme. The character letters were submitted for sentencing purpose and some exhibit the opinion of the writer that Golden would likely never again be allowed to practice law. In fact at the sentencing hearing, Golden's lawyer stated, "[I]t would be like a bolt of lightning if [Golden] would keep his license to practice." We reject the character letters which their authors wrote to the sentencing judge for the purpose of seeking leniency in a criminal sentencing after a guilty plea. Respondent has neither presented convincing argument that those letters are relevant to the issues concerning mitigation of professional discipline before us, nor proof that their authors authorized the letters to be presented to this body for this purpose.

¶ 10 We consider, as the sentencing judge did in enhancement of Golden's sentence, that Golden used sophisticated means to conceal the fraudulent scheme and his actions were an abuse of trust since he was acting as an attorney in committing the crime of misprision of a felony. The sentencing judge stated: "[A]n attorney, as an officer of the court, in the perpetration of a fraud assists that activity in a very special way because, as an officer of the court, the attorney is not supposed to participate in such actions, and the fact that the attorney is participating

provides some indicia to the public that what is transpiring is, in fact, legitimate, although perhaps creative."

## IV. PURPOSE OF LAWYER DISCIPLINE

 ¶11 A license to practice law is conferred for the public's benefit. *State ex rel. Okla. Bar Ass'n v. Stewart*, 2003 OK 13, ¶19, 71 P.3d 1, 4. The goal of lawyer discipline is to safeguard the public's interest, the judiciary, and the legal profession; to promote the integrity of the judicial system and process, *id.;* and to deter similar misconduct. *State ex rel. Okla. Bar Ass'n v. Benefield*, 2005 OK 75, ¶21, 125 P.3d 1191, 1195. The purpose of lawyer discipline is not to punish the offending lawyer. *State ex rel. Okla. Bar Ass'n v. Doris*, 1999 OK 94 at ¶37, 991 P.2d at 1025. This Court represents that every person who holds a license to practice law is worthy of the public's confidence in carrying out professional duties. *State ex rel. Okla. Bar. Ass'n v. Raskin*, 1982 OK 39, ¶16, 642 P.2d 262, 267. Although each disciplinary proceeding is unique, we are guided by the

discipline imposed in similar cases. *Stewart,* 2003 OK 13, ¶19, 71 P.3d at 4.

## V. DISCIPLINE

 ¶12 Golden's conduct violated Rules 1.2(c), 1.6(c), 4.1(b), and 8.4(a), (b), and (c) of the Oklahoma Rules of Professional Conduct (ORPC), and Rule 1.3 of the RGDP. ORPC Rule 1.2(c)[1] prohibits lawyers from assisting clients in conduct that they know to be fraudulent. ORPC Rule 1.6(c)[2] requires lawyers whose legal services were used by clients in the commission of criminal or fraudulent acts to report the acts when reporting is required by law or court order. ORPC Rule 4.1[3] requires disclosure of a criminal act when necessary to avoid assisting in a client's criminal or fraudulent acts and the disclosure is not prohibited by ORPC Rule 1.6. ORPC Rule 8.4(a), (b), and (c)[4] prohibits lawyers from violating the ORPC; from committing criminal acts which reflects on their honesty, trustworthiness, or fitness to practice law; and from engaging in dishonest, fraudulent conduct. Rule 1.3 of the RGDP[5] prohibits

---

1. The applicable verison of Rule 1.2 of the ORPC provides, in part:

 (c) A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law.
 5 O.S. 2001, ch. 1, app. 3–A, rule 1.2. The ORPC was amended effective January 1, 2008, but the 2001 ORPC is applicable here.

2. The applicable version of Rule 1.6 of the ORPC provides, in part:

 (b) A lawyer may reveal, to the extent the lawyer reasonably believes necessary, information relating to the representation of a client:
 . . .
 (2) to rectify the consequences of what the lawyer knows to be a client's criminal or fraudulent act in the commission of which the lawyer's services had been used, provided that the lawyer has first made reasonable efforts to contact the client but has been unable to do so, or that the lawyer has contacted and called upon the client to rectify such criminal or fraudulent act but the client has refused or is unable to do so;
 . . .
 (c) A lawyer shall reveal such information when required by law or court order.

5 O.S. 2001, ch. 1, app. 3–A, rule 1.6.

3. The applicable version of Rule 4.1 of the ORPC provides, in part:

 In the course of representing a client[,] a lawyer shall not knowingly:
 . . .
 (b) fail to disclose a material fact to a third person when disclosure is necessary to avoid assisting a criminal or fraudulent act by a client, unless disclosure is prohibited by Rule 1.6.
 5 O.S. 2001, ch. 1, app. 3–A, rule 4.1.

4. The applicable version of Rule 8.4 of the ORPC provides, in part:

 It is professional misconduct for a lawyer to:
 (a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;
 (b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
 (c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation[.]

5. Rule 1.3 of the RGDP provides:

 The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reason-

acts contrary to the prescribed standards of conduct which would reasonably bring discredit upon the legal profession. Golden's conviction of misprision of a felony is prima facie evidence that he committed acts which would constitute a violation of these rules.

¶ 13 This Court has not previously addressed lawyer discipline based on the criminal act of misprision of a felony. However, we imposed discipline in a Rule 7 proceeding in *State ex rel. Okla. Bar Ass'n v. Shofner*, 2002 OK 84, 60 P.3d 1024, based on a criminal conviction for acts similar to Golden's. Shofner actively assisted a client to illegally conceal property in a bankruptcy proceeding. The scheme in *Shofner* involved the client's use of a pseudonym. Shofner produced witnesses which vouched for his honesty, integrity, and ability as a lawyer. He had practiced law for thirty-three years without a grievance being filed against him. The evidence was that Shofner had been duped into the scheme by a particularly manipulative client, had not engaged in the misconduct for his own personal gain, and had made restitution.

¶ 14 In *Shofner*, we noted that occasionally discipline less than disbarment has been imposed based on acts leading to the conviction of a crime involving dishonesty but noted that the misconduct was not "intimately tied to the respondents' role as an attorney." This Court disbarred Shofner based on his criminal conviction involving fraudulent conduct in his capacity as an attorney. The very nature of Shofner's criminal conviction was based on active participation in a fraudulent scheme just as Golden's conviction was based on active participation in a fraudulent scheme.

¶ 15 Past behavior being the best forecaster of future behavior, disbarment is the only discipline which will protect the public and restore integrity to the bar lost by Golden's misconduct. Our decision in *Shofner* and consistency compel that Golden be disbarred. Disbarment is the appropriate discipline, the discipline which will best serve the public's welfare, and the only discipline that will protect the integrity of the bar and the judicial system.

## VI. CONCLUSION

¶ 16 Golden's misconduct violated the rules governing a lawyer's conduct, was egregious, was an abuse of trust, brought great disrepute to the legal profession, and actively concealed great harm to many people and to the health care system as exhibited by the $5,719,340.22 order of restitution. Disbarment from the practice of law is the single discipline which will accommodate the goals of lawyer disciplinary proceedings. James E. Golden, Jr. is disbarred and his name is stricken from the roll of attorneys. The disbarment is to be effective from December 3, 2007, the date of this Court's order of immediate interim suspension.

**RESPONDENT DISBARRED AND NAME STRICKEN FROM ROLL OF ATTORNEYS EFFECTIVE FROM DECEMBER 3, 2007.**

WINCHESTER, C.J., EDMONDSON, V.C.J., WATT, TAYLOR, COLBERT, JJ., concur.

HARGRAVE, OPALA, REIF, JJ., disqualified.

KAUGER, J., recused.

ably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.