694 S.E.2d 6

**In the Matter of William Grayson ERVIN, Respondent.**

**No. 26816.**

Supreme Court of South Carolina.

Heard April 6, 2010.

Decided May 19, 2010.

Order Reinstating Attorney to Practice of Law May 25, 2010.

Lesley M. Coggiola, Disciplinary Counsel, and C. Tex Davis, Jr., Senior Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

Thomas C. Brittain, of Conway, for respondent.

PER CURIAM.

In this disciplinary matter, the Office of Disciplinary Counsel (ODC) brought formal charges against Respondent William Grayson Ervin following his arrest for pointing and presenting a firearm. The Panel recommended Respondent be suspended for two years retroactively, pay the costs of the proceeding, and attend counseling for two years. We believe a lesser

sanction is warranted and suspend Respondent for six months retroactive to the date of his interim suspension.

## I.

Respondent graduated from college in 2004 and then worked as a police officer in Horry County for a year and a half. Following his graduation from law school in 2007, Respondent began working as an assistant solicitor with the Ninth Circuit Solicitor's Office.

This case arises from a road rage incident. On February 15, 2008, Respondent was arrested and charged with pointing and presenting a firearm after he allegedly pointed his gun at a driver ("female driver") in another vehicle while driving. Respondent was immediately fired from the solicitor's office and placed on interim suspension.

The female driver informed law enforcement that she was alone in her vehicle when Respondent, without provocation, displayed a firearm. While Respondent exercised extremely poor judgment warranting a sanction, the facts are not as reprehensible as reported by the female driver.

The record reveals the following facts. Respondent was driving from Charleston to Myrtle Beach on February 15, 2008. As he was merging onto the Ravenel Bridge, he drove behind a vehicle traveling around twenty miles-per-hour. Respondent testified the vehicle was "zigzagging" in the lane, so he attempted to get around it. Respondent admitted he was following the vehicle too closely. As he tried to pass the vehicle, Respondent testified the female driver and her male passenger extended their middle fingers and shouted at him. Respondent testified he tried to pass them a couple of times, but they cut him off each time. When Respondent was eventually able to get in front of the car, he tapped his brakes, apparently in an attempt to frustrate the driver.

The female driver then pursued Respondent and passed him. As the couple's vehicle passed Respondent's vehicle, the male passenger held up a gun, put his middle finger up, and yelled at him. Respondent passed them, took his gun from the center console,[1] and said: "What the hell are you doing, I

---

1. Respondent lawfully owned the gun and was lawfully carrying the gun in his vehicle.

have one too." This concluded the road rage incident, and the female driver exited the highway. The female driver called 911 claiming to be a victim of road rage. The female driver provided information concerning Respondent's vehicle. Shortly thereafter, the police stopped Respondent's vehicle and arrested him.

Respondent and the female driver disputed the events leading up to the incident. According to the incident report, the female driver claimed she was by herself in the vehicle, and as she was driving on the highway, Respondent's vehicle came up behind her at a high rate of speed. The female driver stated that as he passed her, Respondent was yelling and pointing a gun at her. The female driver denied any road rage conduct on her part, as well as the presence of a male passenger in her vehicle.

After investigating the matter, the Attorney General's Office offered Respondent the opportunity to enter into pre-trial intervention (PTI) in exchange for the dismissal of the charge.[2] After Respondent successfully completed PTI, the charge was nol prossed and expunged from his record.

For reasons not known, law enforcement never investigated Respondent's claim that a male passenger had first pointed a firearm at Respondent and threatened him. Law enforcement simply accepted the female driver's claim that she was alone. The truth came to light at the Panel Hearing. The female driver's call to 911 was recorded. The 911 recording proves the presence of a male passenger in the vehicle. The voice of the male passenger is heard relaying identifying information about Respondent's vehicle, such as his license plate number. Additionally, Respondent submitted affidavits from the female driver's landlord stating she saw the driver and her husband— the male passenger—after the incident and the driver told her "they" had a problem with someone on the bridge. Respondent also submitted an affidavit from the property manager of

---

**2.** Since Respondent worked for the solicitor's office, the Attorney General's Office (AGO) handled the prosecution. At the hearing, counsel for Respondent stated Respondent did not know whether the AGO planned to present the case to the grand jury for indictment. However, Respondent was under the impression that the process would take a long time due to the AGO's workload, and for this reason, he decided to take the offer of PTI in exchange for the charges being dropped.

the female driver's residence. He asserted that the female driver told him about the incident and that both she and her husband were in the vehicle. A day later, she told the property manager the person involved in the incident was a solicitor and "we (she and [her husband] ) are going to sue him for 'a lot of money.' "

The true facts concerning the road rage incident in no manner exonerate Respondent, yet the facts mitigate the degree of his misconduct. Respondent exercised extremely poor judgment in participating in this road rage incident. Respondent could have removed himself from the situation after the initial contact, but he chose to further engage the couple in the other vehicle. Respondent was then confronted and threatened by the male passenger with a firearm. The female driver lied to law enforcement, and when law enforcement merely accepted her claims without any scrutiny, she saw an opportunity to leverage Respondent in a civil lawsuit. If law enforcement had simply listened to the 911 transmission, the falsity of the centerpiece of the female driver's claim would have been revealed.

The Panel questioned Respondent regarding his counseling sessions. Respondent admitted he perhaps had unresolved issues as a result of a prior shooting incident when he was a police officer. Respondent was candid with the Panel and took full responsibility for his actions.

In their report, the Panel adopted Respondent's version of events as a matter of fact, specifically finding that the driver lied when she told police she was alone in the vehicle. We concur in this assessment. The Panel found Respondent violated Rules 8.4(a) and 8.4(b), Rules of Professional Conduct, Rule 407, SCACR. As mitigating factors, the Panel found Respondent made full disclosure to ODC, he demonstrated genuine remorse for his conduct, and he had no disciplinary history. Respondent has been on interim suspension since his arrest. The Panel recommended Respondent be suspended for two years retroactively, pay the costs of the proceeding, and attend counseling for twenty-four months.

## II.

This Court has the sole authority to discipline attorneys and to decide the appropriate sanction after a thorough

review of the record. *In re Thompson,* 343 S.C. 1, 10–11, 539 S.E.2d 396, 401 (2000). This Court "may accept, reject, or modify in whole or in part the findings, conclusions and recommendations of the [Panel]." Rule 27(e)(2), Rules for Lawyer Disciplinary Enforcement, Rule 413, SCACR.

## III.

 We adopt the Panel's factual findings regarding the incident and agree that, through his actions on February 15, 2008, Respondent violated Rules 8.4(a) and 8.4(b) of the Rules on Professional Conduct (misconduct to violate the Rules of Professional conduct and to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects). Respondent exercised extremely poor judgment in allowing an avoidable situation to escalate into a dangerous incident. However, we believe Respondent realizes the serious nature of the incident and has expressed genuine remorse for his conduct. We find a six-month suspension is warranted. *See In re Jordan,* 385 S.C. 614, 686 S.E.2d 682 (2009) (imposing a nine-month suspension where attorney was charged with multiple drug offenses, including possession with intent to distribute, but successfully completed the PTI program); *In re Sorenson,* 380 S.C. 119, 669 S.E.2d 91 (2008) (imposing a public reprimand where attorney completed the PTI program after being charged with unlawful gaming and betting on four separate occasions); *In re Hart,* 366 S.C. 557, 623 S.E.2d 650 (2005) (imposing a public reprimand where attorney was arrested for criminal domestic violence, but completed the PTI program).

## IV.

We suspend Respondent from the practice of law for six months, retroactive from the date of his interim suspension on February 21, 2008. Additionally, per the Panel's report, we order Respondent attend counseling at least once a month for twenty-four months, submit quarterly reports from his counselor to ODC, and pay the costs of these proceedings.

**DEFINITE SUSPENSION.**

## ORDER

Respondent was suspended on May 11, 2010, for a period of six (6) months, retroactive to February 21, 2008. He has now filed an affidavit requesting reinstatement pursuant to Rule 32, of the Rules for Lawyer Disciplinary Enforcement contained in Rule 413, SCACR.

The request is granted and he is hereby reinstated to the practice of law in this state.

/s/Daniel E. Shearouse
 Clerk