2012 OK 29

**STATE of Oklahoma, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**James Albert CONRADY, Respondent.**

**SCBD No. 5735.**

Supreme Court of Oklahoma.

April 3, 2012.

Gina Hendryx, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Rod W. Wiemer, Okmulgee, Oklahoma, for Respondent.

GURICH, J.

¶ 1 On March 16, 2011, the Oklahoma Bar Association ("OBA") filed a complaint against attorney James Albert Conrady ("Conrady") for alleged professional misconduct, as authorized by Rule 6.1 of the Rules Governing Disciplinary Proceedings ("RGDP").[1] After hearing the testimony of witnesses, and being presented with several exhibits, the Pro-

---

1. 5 O.S.2001, ch. 1, app. 1–A.

fessional Responsibility Tribunal ("PRT") concluded that Conrady's actions were a violation of Rule 8.4(b) of the Oklahoma Rules of Professional Conduct ("ORPC").[2] The PRT also found Conrady had violated RGDP Rule 1.3. The Report of the Trial Panel recommended Conrady be suspended for a period of two years and one day.

### Factual and Procedural History

¶ 2 On January 30, 2009, Conrady returned to Oklahoma following a three-week trip to the Middle East. Conrady was met at the Tulsa airport by his longtime girlfriend, Janice Pierce ("Pierce"), for a return trip to Okmulgee. During the drive home, Pierce informed Conrady she no longer wanted to continue their relationship. Pierce dropped Conrady off at his apartment; however, she refused to discuss the relationship any further. At some point Pierce also advised Conrady that she had begun dating a fellow Sunday school teacher at her church, Steve McCroskey ("McCroskey").

¶ 3 Over the next twenty-four hours, Conrady became increasingly despondent. He began consuming vodka and taking pain medication. Pierce ignored Conrady's repeated efforts to contact her during this period of time. On the evening of February 1, an intoxicated and emotionally charged Conrady armed himself with a .45 caliber semi-automatic handgun and drove to McCroskey's residence.[3] Fortunately, prior to Conrady's arrival, McCroskey and Pierce had departed to return McCroskey's six-year-old daughter to her mother in Wilson, Oklahoma. Conrady arrived at the residence and forcibly entered the house, armed with the loaded pistol. After finding no one present, Conrady fired rounds throughout the home, including into a bathroom mirror, a television, and other personal items belonging to Pierce's boyfriend.[4] One of the rounds pierced an interior wall and the projectile was discovered in a bedroom normally occupied by McCroskey's daughter. Another round penetrated the outside wall of the house and lodged in a neighbor's storm door. After exiting the home, Conrady discharged his firearm multiple times into Pierce and McCroskey's unoccupied vehicles. Conrady left the scene and returned to his home in downtown Okmulgee.

¶ 4 Shortly after the incident, police arrived at Conrady's residence to discuss his involvement in the shooting. Conrady refused to authorize a search of his property; however, officers obtained a search warrant and retrieved the .45 caliber pistol used in the shooting. Conrady was placed under arrest and was subsequently charged by the Okmulgee County District Attorney with six counts in *State of Oklahoma v. Conrady*, Case No. CF–2009–22. The six criminal charges filed by the district attorney were as follows:

Count 1—Burglary, second degree (*21 O.S. 2001 § 1435*);

Count 2—Possession of a firearm while in the commission of a felony (*21 O.S.Supp. § 1287*);

Count 3—Reckless conduct with a firearm (*21 O.S.2001 § 1289.11*);

Count 4—Possession of a firearm under the influence of intoxicants (*21 O.S.2001 § 1289.9*);

Count 5—Malicious injury to an automobile (*47 O.S.2001 § 4–104*);

Count 6—Malicious injury to an automobile (*47 O.S.2001 § 4–104*).

On June 10, 2010, Conrady pled nolo contendere to all six counts. He was ordered to

2. 5 O.S.2001, ch. 1, app. 3–A.

3. Conrady brought a total of seventeen rounds of ammunition with him. This included one round in the chamber, eight rounds in the loaded magazine, and eight additional rounds in an extra magazine clip.

4. Conrady suggests that he went to the residence for the sole purpose of bringing about his own death. In his statement to police, Conrady wrote, "[i] went there hoping to get killed or if not I would kill myself." However, his actions and testimony before the PRT seem to contradict this position. Conrady also wrote in his February 15, 2009 statement to police, "[t]hank God they were not there." Exhibit 4A, Pre-Sentence Investigation. One of the interior doors was locked, and he attempted to break the door down twice. During his testimony at the hearing Conrady acknowledged that he was looking for Pierce and McCroskey behind the locked door. (Tr. at 57).

return for sentencing on August 18, 2010. After a continuance, the matter was rescheduled for sentencing on October 13, 2010. Conrady withdrew his original plea at the October hearing and pled guilty to the six charges. On December 15, 2010, the trial judge issued an order deferring sentencing on all six counts, with the probationary periods on each to run concurrently over a period of five years. Conrady was also required to pay court costs and restitution to both of his victims.[5]

¶ 5 The OBA filed its disciplinary proceeding against Conrady on March 16, 2011.[6] A hearing before the PRT was held on May 24, 2011. After weighing all of the testimony, exhibits and stipulations, the PRT issued a report determining Conrady's behavior amounted to a violation of ORPC Rule 8.4(b) and RGDP 1.3. The PRT recommended Conrady be suspended for a period of two years and one day.[7]

### Standard of Review

¶ 6 Review of disciplinary proceedings before the PRT is conducted by this Court using a de novo standard. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Cox,* 2011 OK 73, ¶ 10, 257 P.3d 1005, 1008. As we have announced in prior decisions:

> The ultimate responsibility for deciding whether misconduct has occurred and what discipline is warranted if misconduct is found rests with [this Court] in the exercise of our exclusive original jurisdiction in bar disciplinary matters.

*State of Oklahoma ex rel. Okla. Bar Ass'n v. Taylor,* 2003 OK 56, ¶ 2, 71 P.3d 18, 21, (citing *State of Oklahoma ex rel. Okla. Bar Ass'n v. Todd,* 1992 OK 81, ¶ 2, 833 P.2d 260, 262). Factual and legal determinations of the PRT are not binding on us, and any recommendations are merely advisory. *Id.* Likewise, we are required by RGDP Rule 6.12 to ensure the OBA has established

charges of misconduct by clear and convincing evidence. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Kinsey,* 2009 OK 31, ¶ 13, 212 P.3d 1186, 1192. Admissions or stipulations must be supported by testimony and/or exhibits, and we will evaluate the weight and credibility of the evidence presented to determine if a lawyer has violated rules governing their professional conduct. *Id.*

### Analysis

¶ 7 ORPC Rule 8.4(b) defines as professional misconduct, any criminal act which reflects adversely on an attorney's "honesty, trustworthiness, or *fitness as a lawyer.*" (Emphasis added). The sole basis of the OBA's proceeding against Conrady was the shooting incident of February 1, 2009; as such there was no contention that Conrady had breached any obligation to a client or that the criminal conduct was related to his practice of law. Thus, we are called upon to determine whether those criminal actions reflect on Conrady's fitness to practice law. More particularly, we must examine whether criminal conduct may serve as the basis for disciplinary measures, when it does not (1) call into doubt the honesty or trustworthiness of a lawyer, or (2) directly involve his/her practice of law, or a client relationship.

¶ 8 Conrady stipulated that his conduct amounted to violations of the ethical constraints imposed by the ORPC and RGDP. Despite this acknowledgment we are bound to review the record to ensure the allegations of misconduct are supported by clear and convincing evidence. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Wilcox,* 2009 OK 81, ¶ 4, 227 P.3d 642, 647. The testimony and exhibits reflect that Conrady pled guilty to multiple criminal offenses, including two felony charges. Entering a plea of guilty or nolo contendre to a felony charge has routinely been viewed by this Court as satisfactory evidence of professional misconduct. *State of Oklahoma ex rel. Okla. Bar*

---

5. Conrady was ordered to pay restitution to his victims totaling $6,893.00 and court costs of $3,428.00. (Complainant's Ex. 1, Rule 8 hearing Summary).

6. The OBA chose not to seek an interim suspension based on RGDP Rule 7.3 because Conrady temporarily ceased practicing law following his

arrest in order to seek mental health and drug/alcohol treatment.

7. While the plurality of the PRT recommended a suspension of two years and one day, one member was in favor of disbarment.

*Ass'n v. Golden,* 2008 OK 39, ¶ 4, 201 P.3d 862, 863; *State of Oklahoma ex rel. Okla. Bar Ass'n v. Shanbour,* 2003 OK 116, ¶ 5, 84 P.3d 107, 110; *State of Oklahoma ex rel. Okla. Bar Ass'n v. Arnett,* 1991 OK 44, ¶¶ 2, 9, 815 P.2d 170, 171–172; *State of Oklahoma ex rel. Okla. Bar Ass'n v. Armstrong,* 1990 OK 9, ¶ 9, 791 P.2d 815, 818.

¶ 9 We have also held that the criminal acts of a lawyer may be sufficient to establish violations of Rule 8.4 and Rule 1.3, even when the illicit conduct is not directly related to the practice of law. For example, in *State of Oklahoma ex rel. Okla. Bar Ass'n v. McBride,* 2007 OK 91, ¶ 15, 175 P.3d 379, 386, we determined that multiple alcohol-related offenses were indicative of the attorney's "indifference to legal obligations and . . . [a pattern of] conduct that reflects adversely on the legal profession." Although unrelated to an attorney's practice, guilty pleas stemming from alleged sexual assaults, were deemed clear and convincing evidence the accused had violated ORPC Rule 8.4(b) and RGDP Rule 1.3. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Garrett,* 2005 OK 91, ¶ 13, 127 P.3d 600, 605, *see also State of Oklahoma ex rel. Okla. Bar Ass'n v. Wilburn,* 2006 OK 50, ¶ 10, 142 P.3d 420, 423 (finding violation of ORPC Rule 8.4(b) and RGDP Rule 1.3 as a result of lawyer's guilty plea to charge of outraging public decency); *State of Oklahoma ex rel. Okla. Bar Ass'n v. Murdock,* 2010 OK 32, ¶ 15, 236 P.3d 107, 114 (attorney's Alford plea to one count of outraging public decency is clear and convincing evidence of RGDP Rule 1.3 violation).

■ ¶ 10 Fitness to practice law, as contemplated by ORPC Rule 8.4(b), "encompasses more than an absence of detriment to specific clients." *State of Oklahoma ex rel. Okla. Bar Ass'n v. Aston,* 2003 OK 101, ¶ 11, 81 P.3d 676, 678. The Comments to Rule 8.4(b) are instructive:

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving *violence,* dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. (Emphasis added).

Although Conrady characterizes his illegal actions as "property crimes," we view them in a different light. During cross-examination before the PRT, Conrady acknowledged his efforts to locate McCroskey and Pierce inside the home while on his shooting rampage. Conrady denied any intent to do harm to Pierce or McCroskey, yet his actions were inconsistent with that statement. Although no one was physically injured as a result of the shooting, Conrady's reckless behavior could have easily resulted in death or serious bodily injury. Conrady's attempt to minimize his behavior ignores the emotional impact of his crimes and is an affront to his victims. In light of the compelling evidence in the record before us, Conrady's stipulation to the allegations of professional misconduct, the testimony and exhibits substantiating the criminal violations, and the violent nature of the crimes committed, we find clear and convincing evidence of professional misconduct in violation of ORPC Rule 8.4(b) and RGDP Rule 1.3.

¶ 11 Having found Conrady culpable under the ORPC and RGDP, we must now determine what level of discipline is justified. This Court is empowered to fix discipline commensurate with the facts, including by private reprimand, public censure, suspension, or disbarment. RGDP Rule 1.7. The American Bar Association's Standards for Imposing Lawyer Sanctions § 3.0 (2005) suggest a tribunal consider four factors in determining the appropriate level of discipline:

(a) the duty violated;

(b) the lawyer's mental state;

(c) the potential or actual injury caused by the lawyer's misconduct;

(d) the existence of aggravating or mitigating factors.

*State of Oklahoma ex rel. Okla. Bar Ass'n v. O'Neal*, 1993 OK 61, ¶ 7, 852 P.2d 713, 715 (citing ABA Standard 3.0(a)-(d)). We have consistently recognized that the facts and circumstances of each case will dictate its resolution. *McBride*, ¶ 24, 175 P.3d at 387.

■ ¶ 12 Although we have imposed discipline for criminal transgressions which did not arise from the practice of law or client business, we have never considered facts demonstrating such a violent criminal act.[8] Because the circumstances are unique, we have canvassed decisions from other jurisdictions to assist us with implementing an appropriate level of discipline. The Louisiana Supreme Court faced a remarkably similar scenario in the case of *In re Martin*, 888 So.2d 178 (La.2004). The respondent attorney in *Martin* was charged with violating Rule 8.4(b) of the Louisiana Rules of Professional Conduct, in connection with a shooting incident at his ex-wife's home.[9] Mr. Martin had spent several hours drinking alcohol and ingesting cocaine after discussing visitation issues with his ex-wife. Depressed and intoxicated, Martin returned to his ex-wife's home and "passed out" on the front lawn. *Id.* at 178–179. After noticing the man asleep in the front yard, neighbors called police and a standoff ensued. *Id.* at 179. When Mr. Martin attempted to leave in his truck, officers shot him with a stun gun. *Id.* at 179. The shock of the stun gun device caused Mr. Martin to discharge a firearm he was carrying. *Id.* No one was hit by the round fired from the gun, but police returned fire and wounded Mr. Martin. *Id.* Charges were subsequently filed and Martin pled guilty to five felony counts associated with

the incident. *Id.* There was no dispute regarding the violation of Rule 8.4(b); the only question presented was the appropriate sanction for the misconduct. As in the instant case, Mr. Martin testified he had no intention of harming anyone other than himself. *Id.* at 180, n. 6. Nonetheless, because the attorney created a real threat of potential or actual harm the Court explained that harsh discipline was in order:

In the instant case, respondent's decision to wield a loaded revolver in front of his ex-wife's house while in an intoxicated state created a very high possibility of harm. Despite respondent's lack of intent to cause harm to anyone other than himself, the fact remains that his gun discharged and could have easily injured one of the police officers or an innocent bystander. As in *Brown*, the seriousness of respondent's actions simply cannot be overstated. Consequently, we conclude the baseline sanction for this conduct is disbarment.

¶ 13 After considering mitigating factors, such as the attorney's depression, lack of prior discipline, intoxicated state of mind, cooperation with the state Bar Association, and his remorse, the Louisiana Supreme Court determined suspension for a period of three years was the appropriate discipline. *Id.* at 182–183. *see also Disciplinary Counsel v. LoDico*, 118 Ohio St.3d 316, 888 N.E.2d 1097, 1099 (2008) (holding that attorney's conviction for pointing a firearm at six bar patrons was a violation of ethical rules and warranted indefinite suspension from practice of law); *Disciplinary Counsel v. Howard*, 123 Ohio St.3d 97, 914 N.E.2d 377, 381 (2009) (issuing a two-year suspension from practice of law based on convictions associated with discharging a firearm in the direction of a police officer who was investigating a possible crime on attorney's property); *In re*

---

8. In *State of Oklahoma ex rel. Okla. Bar Ass'n v. Hayes*, 2011 OK 71, 257 P.3d 1000, we evaluated a disciplinary proceeding arising out of an attorney being charged with felony assault with a dangerous weapon for allegedly hitting another man with his automobile. After finding Mr. Hayes had violated ORPC Rule 8.4 and RGDP Rule 1.3 we considered the appropriate measure of discipline and issued a thirty-day suspension

from the practice of law. *Id.* ¶ 15, 257 P.3d at 1004–1005. Nevertheless, we believe Conrady's calculated and violent actions are extreme when compared to the facts in *Hayes*.

9. Louisiana's version of Rule 8.4(b) is virtually identical to ORPC Rule 8.4(b).

*Ervin*, 387 S.C. 551, 694 S.E.2d 6, 9 (2010) (suspending attorney for a period of six months for pointing a firearm at another individual during a "road rage" incident); *Matter of Lewis*, 155 A.D.2d 205, 554 N.Y.S.2d 68, 69 (1990) (guilty plea entered in association with attorney's shooting of two rounds into apartment of person and slashing that person's car tires justified imposition of two-year suspension).

### Mitigating Evidence

¶ 14 Conrady has been a licensed attorney in Oklahoma since 1976. Prior to the present matter, he had never been the subject of a disciplinary proceeding or charged with any criminal offense. Conrady self-reported the criminal charges and his subsequent guilty plea to the OBA. Throughout the grievance process he was cooperative and forthright. Three friends and colleagues testified at the PRT hearing on his behalf. Former District Judge John Maley told the panel he had known Conrady personally and professionally for twenty-five to thirty years. Judge Maley advised the PRT that Conrady is a competent lawyer who provided a real benefit to the Bar and community. Both of the other witnesses testified that Conrady was professional and capable as an attorney, and neither saw any decrease in his level of performance following the February 2009 incident.

¶ 15 In connection with Conrady's criminal case, a Pre–Sentence Investigation was performed by the Oklahoma Department of Corrections. The report indicated Conrady had accepted responsibility for his actions and had tested as a low risk/low needs offender. DOC recommended placing Conrady under supervised probation, and directed him to continue personal therapy and healthy behavior while under DOC supervision. Conrady's psychiatrist and psychologist both submitted letters on his behalf; each applauded the many steps taken by Conrady over the past year, including his abstention from drugs or alcohol.

### Discipline

¶ 16 The goal in bar disciplinary matters is not to punish an attorney for his or her prior conduct, but to "safeguard the interest of the public, of the courts, and of the legal profession." *State of Oklahoma ex rel. Okla. Bar Ass'n v. Albert*, 2007 OK 31, ¶ 11, 163 P.3d 527, 532–533. Nonetheless, we must also weigh the deterrent effect upon Conrady and the Oklahoma Bar as a whole. *Taylor*, ¶ 22, 71 P.3d at 29. It is the responsibility of the Court to not only weigh those facts in favor of imposing discipline, but also evidence which mitigates the severity of professional misconduct. *State of Oklahoma ex rel. Okla. Bar Ass'n v. Stewart*, 2003 OK 13, ¶ 19, 71 P.3d 1, 4.

¶ 17 Although there are substantial mitigating factors, we believe Conrady's violations are such that the appropriate discipline would ordinarily be disbarment from the practice of law. The PRT recommended a suspension of two-years and one day, and the OBA endorsed this proposed discipline. Counsel for Conrady has requested discipline by public censure or deferment of any suspension as this Court imposed in *McBride, Garrett*, and *State of Oklahoma ex rel. Okla. Bar Ass'n v. Smith*, 2011 OK 8, ¶ 22, 246 P.3d 1090, 1096–1097. Such a request by Conrady is unrealistic considering the gravity of his offense. With the exception of substance/alcohol abuse, the referenced cases have little in common with Conrady's misdeeds. Counsel characterizes his client's transgressions as "property crimes," minimizing the significance of Conrady's misconduct by assailing the PRT report for "[seeking] to punish Mr. Conrady for what might have happened as opposed to what actually happened." Respondent's Answer Brief at pp. 6, 8.

¶ 18 There can be no doubt that Conrady's intentional discharge of multiple rounds from a high caliber firearm was reckless and *potentially* deadly. Yet, Conrady's assertion overlooks the actual and personal harm which resulted from the shooting. Both McCroskey and Pierce were forced to obtain protective orders and live their lives fearful of further aggression. McCroskey was required to temporarily suspend visits with his six-year-old daughter as a result of the

shooting. The harm and threat of harm faced by these individuals was not a mere hypothetical, it was real and it was unnerving. The unlawful acts were also damaging to the legal profession as a whole. Conrady's actions brought embarrassment and discredit to himself and the entire profession.[10] *see State of Oklahoma ex rel. Okla. Bar Ass'n v. Thompson,* 2008 OK 89, ¶ 8, 194 P.3d 1281, 1284 (finding criminal conduct so objectionable it could do nothing but "undermine public confidence and trust in the dignity and integrity of the judiciary and the legal profession."). Additionally, we take special note of exhibits presented by the OBA during the administrative hearing, which included e-mails sent from Conrady to Pierce. In spite of his alleged psychotherapy and sobriety, Conrady delivered e-mails to Pierce in March and April of 2010 which were offensive and demeaning.

¶ 19 Weighing the mitigating evidence against the baseline discipline of disbarment, we hold Respondent, James Albert Conrady is hereby suspended from the practice of law for a period of two years and one day.[11] Complainant OBA's Application to Assess Costs is sustained, and Conrady is directed to pay costs in the amount of $1,426.41.

**10.** OBA Exhibit 5 contains a section from the Okmulgee Daily Times newspaper, with an article detailing the shooting incident and Conrady's arrest on felony complaints.

**11.** Suspension for a period exceeding two years is "tantamount to disbarment." *State of Oklahoma ex rel. Okla. Bar Ass'n v. Mothershed,* 2011 OK 84, ¶ 65, 264 P.3d 1197, 1222. Conrady must follow the procedures outlined in RGDP Rule 11.1 if he wishes to seek reinstatement to membership in the Oklahoma Bar.

**1.** The Oklahoma Bar Association (OBA), had notice that the respondent had allegedly been under the influence of alcohol on February 1, 2009; one of the charges against respondent was an alcohol related offense. He committed a felony while in possession of a firearm. He caused malicious injury to two automobiles. These are not the actions of a man in sterling mental condition. Although the crimes which led to disciplinary action occurred in 2009, references are to the current version of the disciplinary rules because the substantive portions have remained unchanged since 2009. The OBA failed to follow the requirements of Rule 10.2, Rules Governing Disciplinary Proceedings, 5 O.S.2011, Ch. 1,

**IN ACCORDANCE WITH RULE 1.7 OF THE RULES GOVERNING DISCIPLINARY PROCEEDINGS, RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR TWO YEARS AND ONE DAY; RESPONDENT IS ORDERED TO PAY COSTS OF $1,426.41.**

¶ 20 COLBERT, V.C.J., KAUGER (by separate writing), WATT, WINCHESTER, and GURICH, JJ., concur.

¶ 21 TAYLOR, C.J., EDMONDSON, and COMBS, JJ., dissent.

COMBS, with whom TAYLOR, C.J., joins, dissenting.

I would disbar this respondent.

EDMONDSON, J. dissenting.

I would defer a suspension decision in contemplation of Respondent's successful completion of probation, restitution, and rehabilitation.

¶ 22 REIF, J., recused.

KAUGER, J., concurring specially.

¶ 1 The respondent, James Albert Conrady (respondent) committed the crimes that led to this disciplinary action on February 1, 2009.[1] On February 2, 2009, the court

App.1–A, which has not been amended since it was enacted, and states in part, "Whenever it has been determined that a lawyer is personally incapable of practicing law, his license to practice shall be suspended until reinstated by order of this Court." No determination was made by the OBA as to the respondent's competency to practice law. It is clear from the facts of the case, that a "gentlemen's agreement" that respondent cease practicing law does not result in a total cessation of the practice of law, nor does it ensure independent medical verification of mental stability upon a return to practice.

This represents yet another in a string of bar cases in which the attorney may have been incapable of practicing law and the OBA did not proceed under Rule 10 *et seq*, Rules Governing Disciplinary Proceedings, 5 O.S.2011 Ch.1, App.1–A. See, e.g., *State ex rel. Oklahoma Bar Association v. Burns,* 2006 OK 75, 145 P.3d 1088, *State ex rel. Oklahoma Bar Association v. Beasley,* 2006 OK 49, 142 P.3d 410; *State ex rel. Oklahoma Bar Association v. Rogers,* 2006 OK 54, 142 P.3d 428; *State ex rel. Oklahoma Bar Association v. Chapman,* 2005 OK 16, 114 P.3d 414; *State ex rel. Oklahoma Bar Association v. Hummel,* 2004 OK 30, 89 P.3d 1105; *State ex rel.*

records of Okmulgee County reflect that Respondent was charged with, among other offenses, Carrying Weapons Under the Influence of Alcohol.[2]

¶ 2 I agree that this is a situation in which discipline is warranted. I agree that the discipline invoked is appropriate. However, I am concerned about the procedure the OBA used in the handling of this matter. The decision not to seek the suspension of the respondent is reminiscent of *In the Matter of the Reinstatement of Fraley*, 2005 OK 39, 115 P.3d 842, where the procedures for resignation were circumvented. In *Fraley*, the respondent misappropriated funds belonging to the firm for which he worked and from its clients. An agreement was made between the founder of Fraley's firm, his lawyer, and Fraley, and implicitly with the knowledge of the OBA, that he would resign from the OBA and he would be employed by the firm as a law clerk to earn money to pay back his thefts. The firm had reimbursed the client funds. The OBA allegedly learned of his misconduct after his resignation and did not pursue a disciplinary action against him because there was no loss to the client security fund. We strongly disapproved of the informal resignation.[3]

¶ 3 Here, we are confronted with another informal handling of discipline in which the rules were not followed. The court clerk of

Okmulgee County failed to comply with 5 O.S.2011, Ch. 1 App.1–A, Rule 7.2 and the OBA failed to notify us.[4]

¶ 4 Title 5 O.S.2011, Ch. 1 App.1–A, Rule 7.3, Rules Governing Disciplinary Proceedings provides:

> Upon receipt of the certified copies of Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and the judgment and sentence, the Supreme Court shall by order immediately suspend the lawyer from the practice of law until further order of the Court. In its order of suspension the Court shall direct the lawyer to appear at a time certain, to show cause, if any he has, why the order of suspension should be set aside. Upon good cause shown, the Court may set aside its order of suspension when it appears to be in the interest of justice to do so, due regard being had to maintaining the integrity of and confidence in the profession.

Had the Chief Justice received proper notice of the judgment, the respondent would have been suspended from the practice of law immediately. Although there is a procedure for diversionary action by the bar upon a complaint under 5 O.S.2011, Ch. 1 App.1–A, Rule 5.1, Rules Governing Disciplinary Proceedings, this was not pursued by the OBA,

---

Oklahoma Bar Association v. Adams, 1995 OK 17, 895 P.2d 701; State ex rel. Oklahoma Bar Association v. Thompson, 1993 OK 144, 864 P.2d 339, State ex rel. Oklahoma Bar Association v. Garvin, 1989 OK 97, 777 P.2d 926; State ex rel. Oklahoma Bar Association v. McCurtain, 1989 OK 4, 767 P.2d 427.

2. District Court of Okmulgee County, Court Minute dated 2–2–09 and filed February 3, 2009.

3. *In the Matter of the Reinstatement of Fraley*, 2005 OK 39, ¶¶ 26–29, 115 P.3d 842:

To our knowledge this decision by the Office of the General Counsel to abstain from investigating and prosecuting a member of the Bar who has committed an act of such serious misconduct is unprecedented. The reasoning offered by the Bar as justification for the exercise of its discretion in favor of inaction is most unpersuasive.... We believe Mr. Fraley and the Bar have been less than fully candid with this Court about the events surrounding his resignation and its acceptance. [There is a] ... very strong inference that the Bar had agreed to accept his resig-

nation ... and that Mr. Fraley knew it would be accepted as submitted. It is this prior knowledge that explains why he submitted a resignation that is patently non-compliant....

4. Title 5 O.S.2011, Ch.1 App.1–A, Rule 7.2, Rules Governing Disciplinary Proceedings, which provides:

The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents may also be furnished to the Chief Justice by the General Counsel. Such documents, whether from this jurisdiction or any other jurisdiction, shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules.

presumably because felony charges were involved.[5]

¶5 On respondent's behalf, a member of the Oklahoma Bar properly notified the OBA of respondent's arrest shortly after it occurred.[6] Respondent, in a letter to a friend, dated March 9, 2009, wrote:

> Warren self reported to the OBA for me with my permission. Warren made a deal that if I agreed not to practice, the OBA agreed to not suspend my license until further proceedings.[7]

The respondent also contacted Lawyers Helping Lawyers and used its hotline and volunteers.[8] He left Oklahoma and sought treatment in Texas, but he returned to Oklahoma during the pendency of his criminal case.[9] The inference from the record is that he continued to practice law and that he had legal work pending over two years later, at the time of the disciplinary hearing on May 24, 2011, and in fact, there was no prohibition against his doing so.[10]

¶6 On June 15, 2010, a court minute was filed indicating that respondent pled no contest to the crimes with which he was charged.[11] On October 13, 2010, respondent entered a plea of guilty to all crimes with which he was charged; respondent was sentenced on December 15, 2010.[12] The minute for the sentencing was filed on December 20, 2010.[13]

¶7 Rod Wiemer (Wiemer), respondent's attorney, notified the OBA's General Counsel of the conviction by letter, dated December 22, 2010.[14] The OBA opened an investigation on January 14, 2011, and filed a disciplinary complaint against the respondent on March 16, 2011, more than two years after he was charged, nearly a year after he first pled nolo contendere and almost three months after receiving the judgment and sentence. Nothing concerning the conviction was ever sent to this Court.

¶8 At the hearing before the PRT, the general counsel of the OBA, confirmed that there was no interim suspension of respondent. Counsel said:

> Rule 7 proceedings require a judgment and sentence to be in place and they usually are filed as soon as that is done and

5. Title 5 O.S. Supp.2011, Ch.1 App.1–A, Rule 5.1, Rules Governing Disciplinary Proceedings provides:

... (c) In a matter involving lesser misconduct, as defined in Rule 5.1(d), prior to the filing of formal charges, the Office of General Counsel may refer the respondent to the diversionary program. Such program may include, but is not limited to, law office management assistance, Lawyers Helping Lawyers, psychological counseling, continuing legal education programs, and professional responsibility classes. Before referring the respondent to the diversionary program, the Office of General Counsel shall consider the following criteria:
(1) the nature of the misconduct alleged,
(2) whether the misconduct alleged appears to be an isolated event,
(3) whether participation in the diversionary program could benefit the respondent, and
(4) whether participation in the diversionary program might jeopardize protection of the public.
(d) Lesser misconduct is misconduct that does not warrant a sanction restricting the respondent's license to practice law. The misconduct alleged shall not be considered lesser misconduct if any of the following considerations apply....

6. Transcript of the May 24, 2011, Hearing Before the Professional Responsibility Tribunal, Page 31.

7. Transcript of the May 24, 2011, Hearing Before the Professional Responsibility Tribunal, Exhibit 5, Page 46.

8. Transcript of the May 24, 2011, Hearing Before the Professional Responsibility Tribunal, Pages 31–33.

9. Transcript of the May 24, 2011, Hearing Before the Professional Responsibility Tribunal, Pages 26–33.

10. Transcript of the May 24, 2011, Hearing Before the Professional Responsibility Tribunal, Pages 90–93.

11. District Court of Okmulgee County, Docket Sheet/Case Detail, CF 2009–00022, retrieved 3–08–12, On Demand Court Records.

12. District Court of Okmulgee County, Docket Sheet/Case Detail, CF 2009–00022, retrieved 3–08–12, On Demand Court Records.

13. District Court of Okmulgee County, Docket Sheet/Case Detail, CF 2009–00022, retrieved 3–08–12, On Demand Court Records.

14. Transcript of the May 24, 2011 Hearing Before the Professional Responsibility Tribunal, Page 11, Lines 8–11.

that's done pretty contemporaneously with the crime, to interim suspend someone. They were not done in this regard because Mr. Conrady, upon being charged, shortly thereafter, did leave the jurisdiction, go for help, take himself out of the practice of law, so we did not pursue a 7 for those reasons because he was actively seeking treatment, he reported that he was doing so, he left his law practice, he wasn't being a danger of a threat or risk to his clients, so we waited until the sentencing, which occurred at the end of December, and went forward at that point under a Rule 6 proceeding.[15]

¶ 9 Apparently, the OBA elevated respondent's self suspension to either a suspension by this Court or to a diversionary suspension contract; neither happened. The provisions of 5 O.S.2011, Ch. 1 App.1–A, Rule 7.3 do not equate an informal agreement with the OBA to a suspension by the Oklahoma Supreme Court. Apparently, the Respondent did not permanently "self suspend" during a diversion process after his criminal acts.[16] A formal suspension was necessary under 5 O.S. 2011, Ch. 1 App.1–A, Rule 7.3 because of felony acts for which he first pled nolo contendere and then guilty. Even if the OBA

had chosen to use the diversionary program, a program within its sole discretion, there was no formalization of it.

¶ 10 We control and regulate the practice of law in Oklahoma. *Fraley, supra,* teaches that the OBA lacks the authority to decide if an attorney should or should not be permitted to resign without formal approval of this Court.[17] The duties of enforcement and prosecution are placed with the OBA for constitutional reasons.[18] However, the OBA must follow the rules and the rules are mandatory that lawyers be suspended after a felony conviction.[19] It is the mandatory duty of the clerk in a county where a lawyer is convicted to forward the judgment and sentence within five (5) days. It has been the practice for the general counsel of the OBA to promptly notify this Court when a certified copy of a judgment and sentence upon a guilty plea is received.[20] Upon the OBA's receipt of a certified copy of the judgment and sentence, this court should have been asked to suspend respondent.[21] If a licensing authority is not advised of criminal actions by the persons it regulates, it cannot fulfill its duties.[22]

¶ 11 The OBA could also have examined its responsibility as set out under 5 O.S.2011,

**15.** Transcript of the May 24, 2011 Hearing Before the Professional Responsibility Tribunal, Pages 123–124.

**16.** Title 5 O.S.2011, Ch. 1 App.1–A, Rule 5.1, Rules Governing Disciplinary Proceedings, does allow a diversion of a grievance through a contract procedure:

. . . . The Office of General Counsel and the respondent shall negotiate a contract, the terms of which shall be tailored to the individual circumstances of the respondent and the misconduct alleged. In each case, the contract shall be signed by the respondent and the General Counsel, or the General Counsel's representative. The contract shall provide for oversight of all conditions attached to the diversion, and that the respondent shall pay all costs incurred by virtue of the diversion. The contract may be amended upon agreement of the parties.
(f) The contract shall include a specific acknowledgment that a material violation of a term of the contract renders voidable the respondent's participation in the program, and that an investigation of the misconduct alleged may then proceed or that the matter may then be forwarded to the Professional Responsibility Commission for its consideration, as provided in Rule 5.3, RGDP. A material violation of the contract shall be admis-

sible as evidence in a subsequent . . . . disciplinary proceeding.

**17.** *In the Matter of the Reinstatement of Fraley,* see note 3, *supra* at ¶ 36:
We possess original, exclusive and nondelegable jurisdiction which rests on our constitutionally vested power to control and regulate the practice of law and the licensing, ethics and discipline of attorneys. *Matter of Reinstatement of Kamins,* 1988 OK 32, 752 P.2d 1125, 1129.

**18.** *In the Matter of the Reinstatement of Fraley,* see note 3, *supra* at ¶¶ 33–34.

**19.** Title 5 O.S.2011, Ch. 1 App.1–A, Rule 7.3, Rules Governing Disciplinary Proceedings, See ¶ 4, *supra.*

**20.** Rule 7.2, Rules Governing Disciplinary Proceedings, see note 4. *supra.*

**21.** Rule 7.3, Rules Governing Disciplinary Proceedings, see ¶ 4, *supra.*

**22.** *In the Matter of the Reinstatement of Fraley,* see note 3, supra at ¶¶ 33–34:
The constitution places in the judiciary the responsibility for legislation, prosecution and adjudication in the arena of professional discipline of

Ch. 1 App.1–A, Rule 6.2A and under 5 O.S. 2001, Ch. 1 App.1–A, Rule 10.2.[23] No formal investigatory process was made as to whether the respondent was capable of practicing law or whether the public was served by the failure of the OBA to seek a temporary suspension of respondent's license. This court stated, in *State ex rel. Oklahoma Bar Association v. Albert*, 2007 OK 31, ¶ 11, 163 P.3d 527:

> The responsibility of this Court in disciplinary proceedings is not to punish but rather to inquire into and to gauge a lawyer's continued fitness to practice law, with a purpose of safeguarding the interest of the public, of the courts, and of the legal profession. . . .

No formal investigation was made by the Bar into this matter until almost two years after the respondent's criminal acts. Respondent pled guilty to six charges, of which two were felonies. This court cannot protect the public without the OBA fulfilling its duties as set forth in *Fraley, supra.*

¶ 12 The delay in the suspension/disciplinary process was also a disservice to respondent. Had the OBA started Rule 10 proceedings at the time it had notice of respondent's probable inability to practice law, over two years of delay between the initial criminal actions and the disciplinary proceedings would have been avoided.[24] Had the OBA started Rule 10 proceedings in a timely manner, the time line for respondent's potential reinstatement would have been accelerated instead of beginning with the promulgation of the majority opinion more than three years later.

---

lawyers. *Tweedy v. State ex rel. Oklahoma Bar Association*, 1981 OK 12, 624 P.2d 1049, 1054; *In re Integration of the State Bar of Oklahoma*, 1939 OK 378, 95 P.2d 113. Our authority over professional discipline is also conferred by statute. . . . We perform the legislative and adjudicative functions directly, but the enforcement or prosecutorial role is placed by our rules with the organs of the Bar in order to meet the demands of constitutional due process. As we cannot constitutionally be both the judge and prosecutor, we may not control directly or indirectly those decisions made in the exercise of prosecutorial judgment as to whether to investigate and commence and prosecute charges. *Tweedy v. State ex rel. Oklahoma Bar Association*, 624 P.2d at 1054–1055; *State ex rel. Oklahoma Bar Association v. Minter*, 2001 OK 69, 37 P.3d 763, 768.

23. Title 5 O.S.2011, Ch. 1 App.1–A, Rule 6.2A, Rules Governing Disciplinary Proceedings provides:

(1) Verified Complaint and Service.
The General Counsel, with the concurrence of the chairperson or vice-chairperson of the Professional Responsibility Commission, upon receipt of sufficient evidence demonstrating that a lawyer subject to these Rules has committed conduct in violation of the Oklahoma Rules of Professional Conduct, or is personally incapable of practicing law as set forth in Rule 10 hereof, and where such conduct poses an immediate threat of substantial and irreparable public harm, may file a verified complaint in accordance with Rule 6 hereof requesting interim suspension and other appropriate relief. A copy of the complaint shall be served personally or by certified mail, return receipt requested, upon the respondent by General Counsel; provided that, if a respondent refuses to sign for, or otherwise does not claim the certified mail, then the General Counsel may serve the complaint and any further papers, notices and orders in accordance with Rule 12.1 hereof.
(2) Immediate Interim Suspension.
(a) Upon filing of the verified complaint, the Court may issue an order directing the respondent to object and show cause within ten (10) days why such order of interim suspension should not be entered. . . .
Title 5 O.S.2011, Ch. 1 App.1–A, § 10.2, Rules Governing Disciplinary Proceedings, provides:
Whenever it has been determined that a lawyer is personally incapable of practicing law, his license to practice shall be suspended until reinstated by order of this Court.

24. I have long espoused a more frequent use of Rule 10 proceedings. See discussion, note 1, *supra.*