OSCN Found Document:STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HASTINGS

 
 
 

 
 
 
 
 
 
 
 

 


 
 
 
 
 
 


 
 OSCN navigation


 
 
 Home

 
 Courts

 
 
 Court Dockets
 

 
 Legal Research

 
 Calendar

 
 Help
 
 





 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 
 
 

 
 
 
 STATE ex rel. OKLAHOMA BAR ASSOCIATION v. HASTINGS
2017 OK 43
Case Number: SCBD-6261
Decided: 05/16/2017
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2017 OK 43, __ P.3d __

 

NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 




STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
JOHN CHRISTOPHER HASTINGS, Respondent.
ORIGINAL PROCEEDING FOR ATTORNEY DISCIPLINE PURSUANT TO RULES 7.1 AND 7.2, RULES GOVERNING DISCIPLINARY PROCEEDINGS
¶0 John Christopher Hastings, ("Respondent") entered a plea of "No Contest" on a misdemeanor charge of pointing a firearm. He received a 2 year deferred sentence to be supervised by the District Attorney's office and to include a Drug/Alcohol assessment. A disciplinary action was commenced by the Oklahoma Bar Association ("OBA") against Respondent. The panel issued a report recommending Hastings' license to practice law be suspended for a period of two years and one day. After reviewing the evidence and considering all mitigation factors we determine Respondent's license should be suspended for a period of two years. 
RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW FOR
TWO YEARS; ORDERED TO PAY COSTS; ORDERED TO
COMPLETE CONTINUING LEGAL EDUCATION REQUIREMENTS
Stephen L. Sullins, Assistant General Counsel, Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant,
Respondent, John Christopher Hastings, Tulsa, Oklahoma, appearing pro se.
OPINION 
WATT, J.:
¶1 On April 1, 2015, the OBA initiated this summary disciplinary proceeding against Respondent, pursuant to Rules 7.1
[1] and 7.2[2] of the Rules Governing Disciplinary Proceedings ("RGDP").
FACTUAL AND PROCEDURAL HISTORY
¶2 On December 30, 2014, the police responded to a call at Respondent's residence after he pointed a gun at his ex-wife and threatened her life. Respondent's adult daughter and two adult sons also lived in his home. Earlier that day, at the request of his daughter, Respondent contacted his ex-wife to come and pick up their daughter from his home. The daughter was recovering from a medical procedure and wanted her mother to take care of her for a few days.
¶3 Respondent's twenty-seven year marriage to his ex-wife ended six months before this incident.
[3] Prior to the divorce, there were years of prolonged domestic violence by the ex-wife against the Respondent. The ex-wife made an attempt on his life with a butcher knife in addition to other forms of abuse that included plots to end his life.[4] Although during the divorce process there were multiple allegations of violence by both parties, the only permanent protective order that was entered was against the ex-wife to protect Respondent.[5] This protective order was entered on February 8, 2012, for a three year period, until 2015.[6] Thus, this protective order would have been in effect on December 30, 2014, the day the ex-wife was inside of Respondent's home.
¶4 Respondent had been on an alcohol drinking binge that day and he was agitated and hostile by the time his ex-wife was inside of his home. The record is not clear how the ex-wife gained access inside of Respondent's home.
[7] It is likewise unclear how this matter escalated between the parties. The record simply reflects that at some point, Respondent pointed a gun at his ex-wife and made threatening statements.[8] 
¶5 The ex-wife and 3 adult children exited Respondent's home unharmed before the police arrived. A police officer went to Respondent's front door and asked him to come outside. He was uncooperative and resistive to multiple requests by the police, and he refused to come out. The Special Operation Team ("SOT") of the police force was eventually called in and they took over negotiations. There was a stand-off for several hours and the SOT eventually had to use tear gas to force Respondent out of his home. Respondent had slurred speech, a heavy odor of alcohol and was unsteady on his feet when he exited the house.
[9] This incident was covered by local television stations and local newspapers.
¶6 Respondent was arrested on the night of the incident and he was initially charged with two separate felony counts: (1) pointing a firearm; and (2) resisting an officer. On April 10, 2015, Respondent entered into a plea agreement the terms of which included the dismissal of both felony counts.
[10] In exchange, Respondent agreed to plea of "no contest" to a charge of misdemeanor of pointing a firearm and agreed to a drug and alcohol assessment with a two (2) year deferred sentence, set for hearing on April 6, 2017.[11] Respondent appeared for this hearing as ordered on April 6, 2017. The district court withdrew Respondent's previous guilty plea to the misdemeanor charge, dismissed the charge and granted an expungement.[12] 
¶7 Respondent testified that shortly after this incident, he was hospitalized for approximately one month with serious medical issues unrelated to the events of this night.
[13] He stopped drinking alcohol sometime in January, 2015. Respondent also began attending Alcoholics Anonymous ("AA") and he considers his official sobriety date in February, 2015. Since that time, he has been actively involved in substance abuse recovery. These efforts include professional treatment, becoming active with AA by attending multiple meetings each week and having frequent communication with his sponsor. Random drug and alcohol screens have all been negative. All evidence presented reflects Respondent has been compliant with his substance abuse recovery efforts. He completed the drug and alcohol assessment as ordered by the criminal court. At the request of the OBA, he was evaluated by a psychologist it selected. Respondent has followed all additional recommendations of this OBA expert.
¶8 At the time of this incident, Respondent was suffering from alcohol and opiate addictions, as well as post-traumatic stress disorder ("PTSD") related in part from abuse in the marriage. The OBA expert testified the documentation she reviewed reflected there was tremendous abuse by the ex-wife that went on for some period of time during their marriage.
[14] In her opinion, this deteriorating marital relationship contributed to Respondent's downward spiral. Before his marriage failed, Respondent had been sober for twenty-eight (28) years.[15] 
¶9 In addition to substance abuse and PTSD, Respondent was diagnosed as having other mental health issues. He received follow up and treatment for all diagnosed conditions. The OBA expert testified that Respondent is considered to be in full remission with respect to his alcohol and opiate addictions and stable in all respects.
[16] Another expert also testified that Respondent's prognosis is excellent with regard to his substance abuse recovery. The OBA expert and Respondent's treating provider both concluded that he is fit to practice law. 
¶10 Respondent has expressed genuine regret and remorse over his actions of December 30, 2014 and its impact and disgrace to the legal profession. The record reflects that since the events of that day, Respondent has sought out treatment and demonstrated a commitment to recovery. Random drug and alcohol random tests have all been negative. There have been no other allegations raised against Respondent since this isolated incident.
¶11 After the resolution of the criminal matter, in April, 2015, the ex-wife again filed an application seeking a protective order against Respondent. The court dismissed her application. In that same month, Respondent filed for another protective order alleging the ex-wife was again harassing him and threatening harm.
[17] On May 7, 2015, Respondent's application was granted by the same judge that denied the ex-wife's application. The protective order issued was for a term of five years and the judge ordered the ex-wife was to remain 100 yards from Respondent at all times.[18] By contrast, the initial protective order was granted against the ex-wife for a term of 3 years, expiring February, 2015. 
¶12 During the hearing before the Professional Responsibility Tribunal ("PRT"), Respondent admitted he had a gun on the day in question. In fact, Respondent testified that he always had a gun nearby because of his fear about what his ex-wife had done to him.
[19] On the day of the incident, Respondent had a gun inside of a pocket in his pajama pants.[20] He initially denied committing the act set forth in the criminal matter and attempted to explain why he entered the plea. However, with repeated questioning, he admitted that if his son said that Respondent pointed the gun at his ex-wife, he believes his son was telling the truth about the events. Respondent admitted that he was intoxicated and that he did not have full recall of the events from that day. He eventually admitted at the hearing that he did have the gun and that he pointed it at his ex-wife making a threatening statement.
¶13 In December, 2014, Respondent had a law firm with a staff of approximately 12 people. He described his law practice as "shaky" and he wanted to quit before this incident.
[21] His practice was operational, but after this incident was reported in the newspapers, his clients requested all of their client files be transferred.[22] While he was in the hospital, his staff prepared the necessary paperwork to formally transfer the files to another attorney. He believes all case files were closed by early February, 2015. He had no open legal cases in April, 2015. The evidence reflects that Respondent has not practiced law during the period of his suspension. In fact, he ceased the practice of law more than two months prior to his interim suspension.
¶14 On April 16, 2015, the OBA filed a Notice and Transmittal of Criminal Record Relating to Plea of Guilty as a result of Respondent's plea. On April 27, 2015, this Court entered its order of immediate interim suspension. A hearing before the PRT was held on August 20, 2015 and August 10, 2016. After considering all of the testimony and exhibits, the PRT issued a report determining Respondent's conduct constituted a violation of RGDP 7.1 and 7.2. The PRT recommended that he be suspended for a period of two years and one day.
[23] 

STANDARD OF REVIEW

¶15 This Court has exclusive original jurisdiction in bar disciplinary matters to exercise its constitutional, non-delegable power to regulate the practice of law and ethics. State ex rel. Okla. Bar Ass'n v. Passmore, 2011 OK 90, 264 P.3d 1238, (hereinafter "Passmore"); State ex rel. Okla. Bar Ass'n v. Whitebook, 2010 OK 72. Protection of the public and purification of the Bar are the primary purposes of disciplinary proceedings rather than to punish the accused lawyer. State ex rel. Okla. Bar Ass'n v. Givens, 2014 OK 103, 343 P.3d 214, (herinafter,"Givens"). This Court will conduct a de novo review of the record and decide whether misconduct has occurred and the appropriate discipline. Passmore, 2011 OK 90, ¶15, 264 P.3d at 1243. We are not bound by the PRT's findings of fact, analysis of the evidence, view of the credibility of witnesses, or its recommendation of discipline. Id. 
¶16 The record must be sufficient for this Court to conduct an inquiry into the essential facts. Givens, 2014 OK 103, ¶ 9, 343 P.3d at 217. On April 16, 2015, the OBA filed certified copies of the criminal information, plea of "no contest" to a misdemeanor, pointing a firearm, and the deferred sentence. Pursuant to Rule 7.2 RGDP, the judgment and sentence constitute conclusive evidence of the commission of the crime upon which the judgment and sentence was based and shall be the basis for discipline. The record consists of these certified copies, the briefs of the parties, attached exhibits and transcripts of proceedings held by the PRT. We find there is a sufficient record for our de novo review.
ANALYSIS
¶17 In a summary disciplinary proceeding we address two issues: 1) whether the criminal conviction demonstrates the lawyer's unfitness to practice law, and if so, 2) determine the appropriate discipline to be imposed. Givens, 2014 OK 103, ¶10, 343 P.3d at 217. 
¶18 We begin with examining Respondent's criminal conduct to determine if it reflects his unfitness to practice law. Respondent pointed a gun at his ex-wife and threatened her life when she was inside of his home. He pled no contest to a misdemeanor charge of pointing a firearm. The Oklahoma Rules of Professional Conduct ("ORPC"), 5 O.S. 2011, ch. 1, app. 3-A, provide guidance at Rule 8.4 (b) which defines professional misconduct as follows:


It is professional misconduct for a lawyer to:
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects;
Comment 2 to Rule 8.4 ORPC provides in pertinent part:


Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation. 
¶19 The OBA disciplinary action against Respondent was initiated in response to Respondent's plea of "no contest" to this misdemeanor charge. Respondent was also very intoxicated on December 30 and resistive to the police efforts creating an extended stand off with the police. Relying on similar recent decisions,[24] this misdemeanor crime and Respondent's substance abuse condition demonstrate his unfitness to practice law within the meaning of Rule 8.4 and violate this rule. Criminal acts do not have to directly relate to the practice of law to constitute a violation of Rule 8.4 ORPC. State ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29, ¶ 9, 275 P.3d 133, 137, (hereinafter "Conrady"), State ex rel. Okla. Bar Ass'n v. McBride, 2007 OK 91, ¶ 15, 175 P.3d 379, 386.
¶20 The second issue to resolve in a summary proceeding is to determine the appropriate discipline under these circumstances. The PRT has recommended suspension for two years and a day. Although this recommendation is given careful consideration, it is not binding on this Court. State ex rel. Okla. Bar Ass'n v. Murdock, 2010 OK 32, ¶ 6, 236 P.3d 107, 111. 
¶21 Two recent cases where we have suspended attorneys for two years and a day with convictions relating to domestic violence, both differ in the level of violence and severity of the crimes as well as the attorneys commitment to recovery and their remorse. Givens, 2014 OK 103, 343 P.3d 214, Conrady, supra. In both of these cases, it was determined the appropriate discipline was to suspend the attorneys for two years and one day. However, the facts of these two cases contain critical factual differences that support this length of suspension.
¶22 In Givens, the attorney had a history of domestic violence involving physical altercations with his minor son. The attorney pled guilty on two misdemeanor charges of domestic abuse after punching his son in the mouth causing a cut and swollen lip when he was intoxicated. Givens received an eighteen month deferred sentence. Givens made matters much worse, while on probation, he again became intoxicated and allegedly struck his son in the back of his head. Givens' son called 911 and the police responded. This time, Givens was charged in municipal court with disturbing the peace and was sentenced to the Tulsa county jail for one year. This sentence was suspended and he was ordered to undergo counseling, take random urine analysis tests, attend and complete a domestic violence program and ordered to not consume un-prescribed medication or illegal drugs. 
¶23 After his subsequent municipal charges, Givens' initial deferred sentence was accelerated. Givens failed to notify the OBA about his initial conviction until more than two years after this initial plea. He waited more than one year to notify the OBA of his second municipal charge and plea. This Court ordered an interim suspension pursuant to Rule 7.3 RGDP upon learning of his conviction. During the time of his interim suspension, he had an alcohol related relapse and was not active in substance abuse recovery. We expressed concern over there was a "pattern of domestic violence" with two separate incidents involving altercations with his minor son. Another disturbing factor was during the period of his suspension, he engaged in actively attempting to deceive this Court with substituting file stamped pages to make it appear that a filing had been timely and he also used his firm's letterhead while suspended. We found that Givens had repeat criminal acts, lack of commitment to substance abuse recovery, and failed to follow and comply with this Court's order. Accordingly we found that a suspension of two years and a day was an appropriate discipline. 
¶24 Likewise, the underlying facts giving rise to the discipline of two years and one day in Conrady are distinguishable from this disciplinary matter with Respondent, Hastings. Conrady's criminal behavior escalated after his longtime girlfriend decided to end their relationship. In response, he began drinking vodka and taking pain medication and making repeated attempts to contact his former girlfriend. She ignored his calls. The next evening, while intoxicated and emotionally driven, he loaded himself with a semi-automatic handgun and drove to her residence. She was not home, but he fired multiple rounds throughout her home damaging, a mirror, television, personal items of her boyfriend and a projectile was discovered in a bedroom normally occupied by her young daughter. Conrady then continued his shooting spree, discharging the gun multiple times into his former girlfriend and her boyfriend's vehicles.
¶25 Conrady pled guilty to six different felony counts. He received a deferred sentence to run over a period of five years. More than one year after this incident, even in light of his sobriety and obtaining psychotherapy, he delivered multiple e-mails to his former girlfriend which were offensive and demeaning. In considering the appropriate discipline, this Court noted that Conrady's intentional firing of multiple rounds from a high caliber firearm "was reckless and potentially deadly." Conrady 2012 OK 29, ¶ 18, 275 P.3d 133, 139. The former girlfriend and her boyfriend had to obtain protective orders and lived their lives with fear of additional aggression from Conrady. We found there was substantial harm inflicted and threat of harm against the victims. Disturbing factors specifically highlighted in Conrady, supra, include guilty plea to six different felony counts, the level of violence inflicted and the attorney's ongoing harassment of his former girlfriend. Conrady's order of discipline was a suspension for two years and one day.
¶26 The facts of State ex rel. Okla. Bar Ass'n v. Zannotti, 2014 OK 25, 330 P.3d 11, wherein we determined the attorney should only be suspended for a period of two years, are more consistent with the evidence in the record before us. Zanotti began a sexual dating relationship with his client, J.T., who was going through a divorce. Shortly after their dating relationship began, he withdrew as legal counsel. About a year later, J.T. decided to end the relationship. Zanotti became jealous and needy as he did not want the relationship to end. He drove to J.T.'s home and immediately became aggressive, by kissing her, then taking her phone away and smashing it. Zanotti became physically violent, throwing J.T. against a wall, hitting her causing two black eyes and a gash across her nose. He took off his clothes, ordered her to undress and lie down on the bed. Zanotti got on top of her, then tightened his hands around her neck and then asked if she loved him and would marry him.
¶27 J.T. was frightened but eventually got away from Zanotti, ran outside and had a neighbor call 911. A court later granted J.T. a protective order against Zanotti. He was charged and pled nolo contendere to two different misdemeanor charges: (1) domestic assault and battery, and (2) malicious injury to property. We found in this matter, that an appropriate discipline for Zanotti was a two year suspension. 
¶28 There are a number of mitigating factors present in the case before us with respect to Respondent, Hastings. Respondent was the victim of domestic violence, with a protective order in place against his ex-wife at the time she was found inside of his living room. Respondent's substance abuse condition was precipitated by the years of abuse he endured from his marriage. The domestic abuse fueled the conditions that led to the events of December 30, 2014.
¶29 The goal in attorney disciplinary matters is not to punish an attorney for the cited conduct, but rather to protect the public and preserve the integrity of the bar. Givens, 2014 OK 103, ¶ 18, 343 P.3d at 218; Conrady, 2012 OK 29, ¶ 16, 275 P.3d at 139. The purpose is to evaluate the attorney's fitness to practice law and not punishment of the offending lawyer. We have identified 4 components to attorney discipline: 1) safeguard the public's interest; 2) preserve the public confidence in the judiciary; 3) promote the integrity of the judicial system; and 4) deter similar misconduct. State ex rel. Okla. Bar Ass'n v. McArthur, 2013 OK 73, ¶ 6, 318 P.3d 1095, 1098. 
¶30 We may consider mitigating circumstances when determining appropriate discipline. State ex rel. Okla. Bar Ass'n v. Corrales, 2012 OK 64, ¶ 17, 280 P.3d 968, 973. Prior to this incident, Respondent practiced law for many years without any ethical violations or discipline by this Court. He endured years of domestic abuse at the hands of his ex-wife. This abuse was significant enough to warrant the issuance of a protective order that was still in effect at the time she entered his home on December, 30, 2014. It is unknown how she gained entry inside of Respondent's home that day. Even more notable, is after Respondent threatened his ex-wife and he pled to the misdemeanor, the court denied the ex-wife's application for protective order while granting Respondent's application for another protective order against the ex-wife. In fact, the court issued this protective order on May 7, 2015 for the maximum period for five years and ordering ex-wife to remain at least 100 yards away from Respondent at all times. 
¶31 Since the time of Respondent's arrest, he has been pro-active in seeking treatment. Three months before he entered into his deferred sentence agreement, he had become sober and was actively participating with AA and substance abuse recovery efforts. Respondent voluntarily ceased the practice of law prior to any disciplinary action taken against him. He has not engaged in the unauthorized practice of law during the time he has been suspended. All experts agree that Respondent's substance abuse condition is in full remission and that he is stable and fully capable of safely engaging in the practice of law. Respondent has acknowledged that substance abuse recovery is a life long commitment and his actions reflect this understanding.
¶32 Although this Court does not excuse Respondent's behavior, we recognize that there were extraordinary circumstances that created the conditions that made the events of December 30, 2014 possible. Respondent did not leave his home that day with the intent of being aggressive toward his ex-wife. Rather, his ex-wife, who had been court ordered to stay away from Respondent, wound up inside of Respondent's home at a time he was agitated and drunk. Respondent has not been aggressive towards his ex-wife or anybody else since this incident. Respondent has accepted full responsibility for his actions and has demonstrated consistent and long term commitment to his substance abuse recovery. 
¶33 The OBA's expert psychologist testified after reviewing extensive medical records and an in person evaluation with Hastings, she is confident that Hastings is aware of the need for a lifelong commitment to treatment.[25] The OBA expert also testified that Hastings' alcohol and opiate addiction is in full remission[26] and that he is capable of practicing law.
¶34 We ordered an interim suspension which began in April, 2015. Respondent had voluntarily ceased practicing law two months prior to this Court's action. He has honored this Court's order, and he has not practiced law throughout his interim suspension. During this time period, he had to obtain another protective order against his ex-wife. He has not exhibited any other violent behavior and has been faithful to his substance abuse recovery. He has not practiced law for over two years. The element of alcohol abuse was a key factor in the commission of the misdemeanor on December 30, 2014. Considering all of these factors and evidence before us, a two year suspension is the proper discipline in this case.
CONCLUSION
¶35 We do not adopt the recommendation of the OBA and the PRT to impose discipline of two years and one day. Weighing the mitigation evidence, we hold the Respondent, John Christopher Hastings is hereby suspended for two years from the date of his interim suspension, April 27, 2015. Costs are hereby assessed against Respondent in the total amount of $4,250.96 to be paid within 6 months of the date this opinion is issued. Respondent is further ordered to complete all past due continuing legal education requirements. Prior to reinstatement, Respondent shall submit an affidavit to the OBA verifying he has paid the assessed costs and completed his continuing legal education as required by this opinion.
RESPONDENT IS SUSPENDED FROM THE PRACTICE OF LAW
FOR TWO YEARS; ORDERED TO PAY COSTS; ORDERED TO COMPLETE CONTINUING LEGAL EDUCATION REQUIREMENTS
GURICH, V.C.J., KAUGER, WATT, WINCHESTER, EDMONDSON, COLBERT, JJ. - CONCUR 
COMBS, C.J., WYRICK, J. - DISSENT (by separate writing) 
REIF, J. - RECUSED 
FOOTNOTES
[1] Rule 7.1, 5 O.S. 2011 ch. 1, app. 1-A:
Criminal conviction of lawyer
A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal. 
[2] Rule 7.2, 5 O.S. Supp. 2014, ch. 1, app. 1-A:
Transmittal of record relating to conviction
The clerk of any court within this State in which a lawyer is convicted or as to whom proceedings are deferred shall transmit certified copies of the Judgment and Sentence on a plea of guilty, order deferring judgment and sentence, indictment or information and judgment and sentence of conviction to the Chief Justice of the Supreme Court and to the General Counsel of the Oklahoma Bar Association within five (5) days after said conviction. The documents shall also be furnished to the Chief Justice by the General Counsel within five (5) days of receiving such documents. Such documents, whether from this jurisdiction or any other jurisdiction shall constitute the charge and be conclusive evidence of the commission of the crime upon which the judgment and sentence is based and shall suffice as the basis for discipline in accordance with these rules. 
[3] FD-2014-1321, District Court of Tulsa County, Decree of Divorce, June 26, 2014. A prior divorce action was filed by Ms. Hastings, FD-2011-1024, District Court of Tulsa County, but was later dismissed when the parties attempted to reconcile. 
[4] CF-2012-1602, District Court of Tulsa County, Affidavit of Detective Dave Walker, filed October 30, 2012: this affidavit describes repeated physical violence by ex-wife against Respondent and attempts on his life and plots to take his life. 
[5] PO-11-1248, District Court of Tulsa County, Court's Decision, filed February 8, 2012, wherein the Court found:
"Mr. Banoleus testified that [ex-wife] went at Respondent with a knife she held above her head, getting within two feet of Respondent. Mr. Banoleus testified that he grabbed [ex-wife] from behind and took the knife from her by prying it from her hand fearful that [ex-wife] was going to use the knife against the Respondent. The evidence was persuasive and clear that [ex-wife's] use of the knife created a threat of imminent physical harm and was domestic abuse against Respondent under the Protection from Domestic Abuse Act." 
[6] OBA Hearing Exhibits, August 20, 2015, Ex. 31; This protective order was included in the court order titled "Court's Decision" filed February 8, 2012, in PO-11-1248, District Court of Tulsa County, also filed in PO-11-1270, District Court of Tulsa County, (wherein the court denied Ms. Hastings' application for lack of evidence), and also filed in FD-2011-1024, a prior divorce action filed by ex-wife against the Respondent. Ms. Hastings filed a motion to dismiss the divorce action on June 4, 2013, stating the parties had reconciled. An order of dismissal was not entered until April 25, 2016, almost two years after the parties were divorced in FD-2014-1321,District Court of Tulsa County. Although it appears the parties reconciled sometime from the grant of the protective order on February 8, 2012, the protective order granted on that day for a three year period of time was never dismissed and appears to have been in effect on December 30, 2014. 
[7] OBA Hearing Exhibits, August 20, 2015, Exhibit 3, Tulsa Police Department Incident Number 2014077424, Arrest and Booking Data. The police reports from 12-30-14 do not indicate how the ex-wife came into the home. Also see, Transcript of Hearing, SCBD 6261, August 20, 2015, p. 28, Respondent asked the "[ex-wife] to come pick her up, but not to enter the house...." Respondent believes that the ex-wife entered his home through the back door. 
[8] OBA Hearing Exhibits, August 20, 2015, Exhibit 3, Tulsa Police Department Arrest and Booking Data. Although Respondent was so intoxicated he has little memory of the event, the police report include statements from the ex-wife and children indicate that Respondent pointed the gun at the ex-wife and then said: " You are going to die today. Where do you want it, the gut or the head?" 
[9] Transcript of Hearing, SCBD 6261, August 20, 2015, p. 18. 
[10] CF-2015-186, District Court of Tulsa County, Order of Deferred Sentence Misdemeanor, filed April 14, 2015, wherein the court stated with respect to the deferred sentence: 
"It is further ordered that upon completion of the term of deferred sentence without violation of the terms and conditions of the deferred sentence that the defendant be discharged without a court judgement of guilt and that his or her plea to the offense charged be expunged from the record by the Court Clerk and the charge be dismissed with prejudice to any further action on said charge and this order be removed from the case file and retained by the Court Clerk in a separate confidential file". 
[11] CF-2015-186, District Court of Tulsa County, Plea of Guilty, filed April 10, 2015. 
[12] CF-2015-186, District Court of Tulsa County, docket entry, April 6, 2017: 
Judge Martha Rupp Carter: Defendant present for deferred review; defendant in compliance; court withdraw previous plea of guilty. Count One and Count dismissed [sic.]; expungement granted. 
[13] Transcript of Hearing, SCBD 6261, August 20, 2015, p. 62. 
[14] Transcript of Hearing, SCBD 6261, August 10, 2016, p. 31. 
[15] Transcript of Hearing, SCBD 6261, August 20, 2015, p. 44. 
[16] Transcript of Hearing, SCBD 6261, August 10, 2016, p. 47. 
[17] PO-2015-1267, District Court of Tulsa County, Petition for Protective Order, filed April 23, 2015. 
[18] PO-2015-1267, District Court of Tulsa County, Order of Protection, filed May 7, 2015. 
[19] Transcript of Hearing, SCBD No. 6261, August 20, 2015, p. 80. 
[20] Transcript of Hearing, SCBD No. 6261, August 20, 2015, p. 80. 
[21] Transcript of Hearing, SCBD No. 6261, August 20, 2015, p. 68. 
[22] Transcript of Hearing, SCBD No. 6261, August 20, 2015, p. 70. 
[23] PRT Report to the Supreme Court, filed November 8, 2016, SCBD No. 6261, p. 7. 
[24] Givens, 2014 OK 103 ¶ 11, 343 P.3d 214, 217, State ex re. Oklahoma Bar Association v. Zanotti, 2014 OK 25, 330 P.3d 11, State ex rel. Oklahoma Bar Association v. Conrady, 2012 OK 29, 275 P.3d 133. 
[25] Transcript of Hearing, SCBD No. 6261, August 10, 2016, p. 39. 
[26] Transcript of Hearing, SCBD No. 6261, August 10, 2016, p. 47. 




COMBS, C.J., with whom WYRICK, J., joins, dissenting:
¶1 While I agree with the majority's determination that Respondent's criminal conduct and his condition demonstrate his unfitness to practice law, I disagree as to what constitutes appropriate discipline under the circumstances. The Oklahoma Bar Association and the Professional Responsibility Tribunal both recommended Respondent be suspended for two years and one day, and I would adhere to those recommendations. 
¶2 The majority departs from these recommendations and suspends Respondent for two years. In doing so, the majority attempts to distinguish this attorney disciplinary proceeding from others involving criminal domestic violence that resulted in suspensions of two years and one day, such as State ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29, 275 P.3d 133 and State ex rel. Okla. Bar Ass'n v. Givens, 2014 OK 103. The majority stresses the single instance of conduct in this matter and Respondent's remorse and dedication to recovery, in contrast to the extended behavior of the respondents in Conrady and Givens. Moreover, the majority focuses on the past misconduct of Respondent's ex-wife as a major mitigating factor, rather than on Respondent's own dangerous actions that are the basis for this disciplinary proceeding.
¶3 Respondent pointed a firearm at his ex-wife and stated "you are going to die today. Where do you want it, the gut or the head?"[1] In addition, Respondent entered into a standoff with a police special operations team and had to be forced from his home with tear gas, potentially endangering not only himself, but also neighbors and law enforcement officers. Respondent's intoxicated threat to his ex-wife and resulting standoff with law enforcement were "reckless and potentially deadly." Conrady, 2012 OK 29, ¶18. Respondent's conduct also thoroughly embarrassed and undermined the legal profession as a whole, as his standoff was the subject of intense media coverage. 
¶4 On multiple occasions, despite his commitment to treatment and sobriety, Respondent has refused to accept full responsibility for the acts he committed, going so far as to have originally denied committing them at all. In a response to this Court, Respondent flat out denied pointing a weapon at his ex-wife:


I did possess a handgun but never did I point it at the alleged victim and this can be verified by my oldest son David Hastings who was present and witnessed the entire event.
Respondent's Response as to Why a Final Order of Suspension Should Not Be Imposed on Respondent (Response), ¶12.
In the same document, Respondent claimed: "I subsequently surrendered to the police without incident 7 hours after they called me." Response, ¶15. He further initially denied threatening his ex-wife during a hearing before the Professional Responsibility Tribunal until confronted with evidence to the contrary. All witnesses to the event contradicted Respondent's denial concerning threatening his ex-wife. Similarly, Respondent hardly surrendered "without incident" to law enforcement. 
¶5 Given the nature of Respondent's conduct, I would suspend him for two years and one day, thereby requiring him to petition for reinstatement pursuant to Rule 11.1 of the Rules Governing Disciplinary Proceedings (RGDP), 5 O.S. 2011, Ch. 1, App. 1-A. This would require Respondent to demonstrate that he meets the high standard required by Rule 11.4, RGDP[2], and demonstrate that he still possesses the requisite learning in the law required for competent practice. See In re Reinstatement of Blake, 2016 OK 33, ¶9, 371 P.3d 465; In re Reinstatement of Page, 2004 OK 49, ¶2, 94 P.3d 80 (noting petitioners seeking reinstatement possess "the heavy burden of showing, by clear and convincing evidence, that reinstatement is warranted."). Further, while the majority would give Respondent six months to pay assessed costs, I would require Respondent to pay all outstanding costs in this matter before any petition for reinstatement under Rule 11.1 would be granted.[3] 
FOOTNOTES
[1] Respondent directly threatened his ex-wife with a weapon in front of several witnesses, in contrast to the Respondent in Conrady, who unloaded his firearm into the property of his former girlfriend and her boyfriend while they were not present. 2012 OK 29, ¶3, 275 P.3d 133. 
[2] Rule 11.4, RGDP, provides:
An applicant for reinstatement must establish affirmatively that, if readmitted or if the suspension from practice is removed, the applicant's conduct will conform to the high standards required of a member of the Bar. The severity of the original offense and the circumstances surrounding it shall be considered in evaluating an application for reinstatement. The burden of proof, by clear and convincing evidence, in all such reinstatement proceedings shall be on the applicant. An applicant seeking such reinstatement will be required to present stronger proof of qualifications than one seeking admission for the first time. The proof presented must be sufficient to overcome the Supreme Court's former judgment adverse to the applicant. Feelings of sympathy toward the applicant must be disregarded. If applicable, restitution, or the lack thereof, by the applicant to an injured party will be taken into consideration by the Trial Panel on an application for reinstatement. Further, if applicable, the Trial Panel shall satisfy itself that the applicant complied with Rule 9.1 of these Rules.
[3] This six-month period conflicts with Rule 6.16, RGDP, which requires costs be paid within 90 days and provides in pertinent part:
Where discipline results, the cost of the investigation, the record, and disciplinary proceedings shall be surcharged against the disciplined lawyer unless remitted in whole or in part by the Supreme Court for good cause shown. Failure of the disciplined lawyer to pay such costs within ninety (90) days after the Supreme Court's order becomes effective shall result in automatic suspension from the practice of law until further order of the Court.




 Citationizer© Summary of Documents Citing This Document
 
 
 Cite
 Name
 Level
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 Cite
 Name
 Level
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 2004 OK 49, 94 P.3d 80, IN THE MATTER OF THE REINSTATEMENT OF PAGE
Discussed
 2007 OK 91, 175 P.3d 379, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MCBRIDE
Discussed
 2010 OK 32, 236 P.3d 107, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. MURDOCK
Discussed
 2010 OK 72, 242 P.3d 517, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WHITEBOOK
Cited
 2011 OK 90, 264 P.3d 1238, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. PASSMORE
Discussed at Length
 2012 OK 29, 275 P.3d 133, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CONRADY
Discussed at Length
 2012 OK 64, 280 P.3d 968, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. CORRALES
Discussed
 2013 OK 73, 318 P.3d 1095, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. McARTHUR
Discussed
 2014 OK 25, 330 P.3d 11, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. ZANNOTTI
Discussed at Length
 2014 OK 103, 343 P.3d 214, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. GIVENS
Discussed at Length
 2016 OK 33, 371 P.3d 465, IN THE MATTER OF THE REINSTATEMENT OF BLAKE
Discussed