STATE ex rel. OKLAHOMA BAR ASSOCIATION v. WIEHL
2023 OK 87
Case Number: SCBD-7359
Decided: 09/12/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 87, __ P.3d __

 

 

STATE OF OKLAHOMA, ex rel. OKLAHOMA BAR ASSOCIATION, Complainant,
v.
RYAN STEVEN WIEHL, Respondent.

BAR DISCIPLINARY PROCEEDING

¶0 Pursuant to Rule 7 of the Rules Governing Disciplinary Proceedings, this summary disciplinary proceeding arises from Respondent's plea of no contest to three felony charges of assault and battery and 12 misdemeanor charges after a physical altercation in a bar. This Court issued an Order of Immediate Interim Suspension of Respondent's license to practice law. After a hearing before the Professional Responsibility Tribunal, the Tribunal recommended that this Court suspend Respondent for one year, effective from the date of his interim suspension, and place Respondent on a deferred suspension until October 13, 2025, subject to certain conditions. We hold that Respondent is suspended for two years and one day from the date of this opinion and ordered to pay costs.

THE RESPONDENT IS SUSPENDED FOR TWO 
YEARS AND ONE DAY FROM THE DATE OF 
THIS OPINION AND ORDERED TO PAY COSTS.

Loraine Dillinder Farabow, First Assistant General Counsel of the Oklahoma Bar Association, Oklahoma City, Oklahoma, for Complainant.

Sheila J. Naifeh, Tulsa, Oklahoma, for Respondent.

Shannon R. Brown, Okmulgee, Oklahoma, for Respondent.

Winchester, J.

¶1 This is a summary disciplinary proceeding initiated pursuant to Rule 7 of the Rules Governing Disciplinary Proceedings21 O.S.2021, § 64921 O.S.2021, § 650.421 O.S.2021, § 137821 O.S.2021, § 64921 O.S.2021, § 64921 O.S.2021, § 26821 O.S.2021, § 64921 O.S.2021, § 54021 O.S.2021, § 64421 O.S.2021, § 137821 O.S.2021, § 137821 O.S.2021, § 64421 O.S.2021, § 2237A O.S.2021, § 6-101

¶2 On November 4, 2022, the Oklahoma Bar Association (OBA) notified the Court of Wiehl's plea of no contest. On November 14, 2022, this Court entered an Order of Immediate Interim Suspension and directed Wiehl to show cause why the Court should set aside the interim suspension. On November 28, 2022, Wiehl filed his Response to this Court's Order to Show Cause, contending that his criminal actions did not warrant an interim suspension because he took full responsibility for his actions and was fit to practice law. We denied Wiehl's request to lift the interim suspension and assigned the matter to the Professional Responsibility Tribunal (Trial Panel) to hold a hearing on the limited scope of mitigation. On March 7, 2023, the Trial Panel held a Rule 7 hearing. On April 28, 2023, the Trial Panel filed its report, recommending that this Court suspend Wiehl for one year, effective from the date of his interim suspension, and place Wiehl on conditional probation until October 13, 2025, the end of his deferred sentence in his criminal matter.

I. FACTS

¶3 On September 20, 2016, Wiehl received his license to practice law in Oklahoma. He practiced law in good standing until his interim suspension.

¶4 On May 21, 2022, Wiehl was involved in a physical altercation at Shot Happens, a bar in Tulsa, Oklahoma. Wiehl began the night at another bar, Market Pub, where he consumed alcohol to excess. He has no memory of how he arrived at Shot Happens. Once there, a patron at Shot Happens observed Wiehl "superman punch" a female, jumping off the floor while he punched the woman. Multiple patrons had to wrestle Wiehl to the ground to restrain him. Wiehl hit and punched one patron, an off-duty EMSA employee, as the patron attempted to subdue him. About 15 minutes later, Wiehl appeared calm, and the patron stopped restraining him. Wiehl stood up, grabbed an industrial-sized bar chair, and threw it at a crowd of people. Several patrons then removed Wiehl from the bar and sat him on a bench outside. A patron called 911 to report the incident. Wiehl then stood up from the bench and hit a woman on the back of her head. The off-duty EMSA employee again took Wiehl to the ground to restrain him, while Wiehl repeatedly hit him. Wiehl also continually stated that he had a knife. Another patron sat on top of Wiehl to restrain him until the police arrived.

¶5 At around 1:00 a.m., several Tulsa police officers arrived at the scene. As the officers attempted to restrain and handcuff him, Wiehl hit, bit, head-butted, and spit on the officers and repeatedly threatened to kill them. The officers found Wiehl's OBA membership card inside his wallet, and Wiehl confirmed he was an attorney. They did not find a knife on Wiehl's person. EMSA also responded to the scene. Wiehl made derogatory and abusive statements to the officers and EMSA personnel and about the Tulsa District Attorney.

¶6 Patrons at Shot Happens suspected that Wiehl had used PCP or some other similar substance due to Wiehl's behavior. Multiple patrons at Shot Happens reported that Wiehl tried to convince them to take PCP with him. Due to the suspected drug use, EMSA transported Wiehl to St. Francis Hospital.

¶7 Upon arrival at the hospital at 2:30 a.m., five police officers and hospital staff had to aid in transferring Wiehl to the hospital bed because of his combativeness. The officers and two hospital security guards placed Wiehl in physical restraints and then had to hold his head, shoulders, arms, hands, legs, and feet in place to allow the hospital staff to safely treat him. They also secured a spit hood around Wiehl's head.

¶8 The hospital staff gave Wiehl a dose of sedatives. However, Wiehl continued to be verbally abusive and combative, attempting to headbutt, bite, and push off the officers and security guards restraining him. Wiehl then bit through the material of his spit hood and spit bloody phlegm into the mouth of one of the hospital security guards. Wiehl threatened the security guard by stating that he was going to rip his skull out of his head and shove it down his throat. Wiehl also made racially derogatory statements to the security guard. As a result of this interaction, the security guard had to be tested for communicable diseases. The test results were negative.

¶9 The hospital staff gave Wiehl a second dose of sedatives. He continued to be combative, and the staff had to restrain him. Wiehl also threatened to sue the hospital staff and officers. The hospital staff gave Wiehl a third dose of sedatives and held him for observation. At approximately 7:00 a.m., the hospital discharged Wiehl into police custody, and the police officers transported Wiehl to the Tulsa County jail.

¶10 Wiehl had taken several medications before going to the bar that night. Wiehl had a prescription for Lexapro for depression, Wellbutrin for depression, Xanax for anxiety, and Vyvanse for ADHD. He also had a license to take medical marijuana for post-traumatic stress disorder (PTSD). He had taken all of his prescribed medications except Lexapro and had smoked marijuana. The hospital staff collected a urine sample from Wiehl at some point prior to his discharge. The test showed that Wiehl's blood alcohol level was 0.26. He also tested positive for marijuana. The urine test did not test for PCP.

¶11 On May 26, 2022, the Tulsa County District Attorney charged Wiehl with 15 criminal counts--three felonies and 12 misdemeanors. Local media, social media, and a national legal blog reported on Wiehl's conduct that led to his arrest and criminal charges.

¶12 On October 18, 2022, Wiehl entered a plea of no contest to all 15 criminal counts, and the district court placed him on an unsupervised deferred sentence for three years, until October 13, 2025. If he does not violate the conditions of his deferred sentence, Wiehl will be discharged without a court judgment of guilt, his plea expunged, and the charges dismissed. The district court also assessed fines and costs, which the court reduced by fifty percent.

II. MITIGATION

¶13 The OBA opened a formal investigation into Wiehl's arrest and criminal charges. Wiehl responded to the OBA's grievance by stating that he believed someone drugged him with PCP. He further stated he sustained a severe concussion that added to the possibility that he was confused, incoherent, and hypervigilant when confronted by the police officers and EMSA personnel. During an interview with the OBA, Wiehl stated that he had run out of his prescription for Lexapro on the day of the incident. Wiehl took advantage of the opportunity to drink, as he normally cannot mix alcohol with Lexapro. He did not recall most of what happened the night of the incident, especially what happened at Shot Happens. Wiehl only recalled drinking beer and shots of alcohol at the Market Pub. Wiehl believed an unknown person at the Market Pub had drugged him with PCP. He claimed he would never voluntarily take PCP. Wiehl cooperated during the OBA's investigation, including taking two random drug tests. He took drug tests on August 16, 2022, and February 24, 2023; both were negative except for marijuana.

¶14 After his arrest, Wiehl sought assistance from Lawyers Helping Lawyers (LHL). Wiehl attended the free therapy sessions offered by LHL and obtained a sponsor, Glenn Blake. Wiehl started and continues to have weekly telephone meetings with Blake. Wiehl admitted to Blake that he was a binge drinker but had not consumed alcohol since the night of the incident. Blake believes Wiehl has accepted responsibility for his actions during the night of the incident and is remorseful.

¶15 Wiehl also began attending Alcoholics Anonymous (AA) meetings and sought psychotherapy from Dr. Jason Franks.

¶16 Wiehl was previously diagnosed with PTSD and other mental health disorders. Wiehl was an active volunteer with the American Red Cross during college. During his senior year at college, he volunteered in West Virginia after the state suffered significant losses from tornadoes. Wiehl experienced more depression and anxiety after he returned from his volunteer trip. He finished his senior year, graduated, and moved back to his parent's home in New York. Wiehl then sought therapy for his heightened depression and anxiety. His therapist diagnosed Wiehl with PTSD due to the trauma of witnessing the destruction and loss of life from the tornadoes.

¶17 The incident at issue triggered Wiehl's PTSD, and he moved back to New York in early 2023 to obtain additional support from his family. He is currently seeking therapy for his PTSD in New York. Wiehl's therapist changed the combination of his medications for his depression, anxiety, and ADHD. The change in medication has had a positive effect on him. Wiehl is attending AA meetings in New York with his stepdad, who has been sober since 1979.

¶18 Wiehl obtained a clerical position at a law firm in New York. His duties involve only client intake. Wiehl has not engaged in the unauthorized practice of law.

¶19 In March 2023, Wiehl testified at the hearing in front of the Trial Panel that he had not consumed alcohol since the night of the incident. Wiehl did not believe he was an alcoholic prior to the incident at issue but admitted that he had a dysfunctional and unhealthy relationship with alcohol. He acknowledged his previous thoughts about alcohol were childish, and he accepted responsibility for what occurred due to drinking alcohol to excess and placing himself in a position for the incident to occur. Wiehl maintained he did not voluntarily take PCP the night of the incident. There was no evidence presented to the Trial Panel to confirm whether Wiehl used PCP voluntarily or involuntarily the night of the incident.

¶20 After the hearing in front of the Trial Panel, Wiehl signed a contract with LHL. He also obtained a drug assessment. The assessment was conducted during two visits (April 5, 2023, and April 11, 2023) and concluded that Wiehl had "Alcohol Use Disorder, Mild, in Early Remission." According to the specialist, Wiehl has been in sustained remission since the anniversary of his arrest. The specialist recommended that Wiehl remain engaged in community self-help meetings to support his ongoing recovery efforts.

III. STANDARD OF REVIEW

¶21 In disciplinary proceedings, this Court acts as a licensing court in the exercise of our exclusive jurisdiction. State ex rel. Okla. Bar Ass'n v. Garrett, 2005 OK 91127 P.3d 600de novo, and the Trial Panel's recommendations are neither binding nor persuasive. State ex rel. Okla. Bar Ass'n v. Anderson, 2005 OK 9109 P.3d 326State ex rel. Okla. Bar Ass'n v. Wilburn, 2006 OK 50142 P.3d 420

¶22 This Court also has the responsibility to ensure the record is sufficient for a thorough inquiry into essential facts and for crafting the appropriate discipline. State ex rel. Okla. Bar Ass'n v. Adams, 1995 OK 17895 P.2d 701de novo review.

IV. DISCUSSION

¶23 Wiehl's plea of no contest to three felony charges and 12 misdemeanor charges arising from a physical altercation at a bar and his subsequent violent behavior serve as the basis for this summary disciplinary proceeding. Rule 7.1 of the Rules Governing Disciplinary Proceedings (RGDP) provides:

A lawyer who has been convicted or has tendered a plea of guilty or nolo contendere pursuant to a deferred sentence plea agreement in any jurisdiction of a crime which demonstrates such lawyer's unfitness to practice law, regardless of whether the conviction resulted from a plea of guilty or nolo contendere or from a verdict after trial, shall be subject to discipline as herein provided, regardless of the pendency of an appeal.

Rule 7, Rules Governing Disciplinary Proceedings, 5 O.S.2021, ch. 1, app. 1-A.

¶24 Not every criminal conviction facially demonstrates an attorney's unfitness to practice law. State ex rel. Okla. Bar Ass'n v. Armstrong, 1990 OK 9791 P.2d 815Id.

¶25 The Court ruled in a handful of cases that an attorney's commission of violent acts fueled by intoxication demonstrates an unfitness to practice law. See, e.g., State ex rel. Okla. Bar Ass'n v. Givens, 2014 OK 103343 P.3d 214State ex rel. Okla. Bar Ass'n v. Zanotti, 2014 OK 25330 P.3d 11State ex rel. Okla. Bar Ass'n v. Conrady, 2012 OK 29275 P.3d 133

V. DISCIPLINE

¶26 This Court has not addressed a disciplinary action that precisely mirrors the situation here, but we look to other examples for a baseline. The OBA and Wiehl cite State ex rel. Oklahoma Bar Association v. Demopolos, 2015 OK 50352 P.3d 1210Demopolos, the attorney verbally and physically abused his wife while intoxicated, hitting her with a closed fist in the arm and head. After the police were called to the scene, the attorney continued his belligerent behavior and made threats of violence toward his wife. Id. ¶ 7, 352 P.3d at 1214. The attorney was charged and pled guilty to obstructing a police officer, threatening to perform an act of violence, and inflicting domestic abuse. Id. ¶ 2, 352 P.3d at 1212. The attorney sought treatment for substance abuse after the incident, including inpatient counseling. However, the evidence presented during his disciplinary proceedings indicated that he had relapsed twice since his treatment. Id. ¶ 13, 352 P.3d at 1215. The Court suspended the attorney's license for one year, from the date of his interim suspension, with an additional one-year deferred suspension contingent upon his compliance with certain conditions related to his ongoing substance abuse treatment. Id. ¶ 31, 352 P.3d at 1219.

¶27 The OBA and Wiehl also cite State ex rel. Oklahoma Bar Association v. Ijams, 2014 OK 93338 P.3d 639

¶28 We find Demopolis and Ijams relevant but distinguishable cases because the attorneys in both cases pled to misdemeanor charges only. Here, Wiehl pled no contest to three felonies involving assault and battery of police officers and EMSA personnel and 12 other misdemeanor charges, the majority of which were for violent behavior towards the patrons at the bar, medical personnel, and security guards.

¶29 We believe a more relevant case to this matter is State ex rel. Oklahoma Bar Association v. Hastings, 2017 OK 43395 P.3d 552Hastings, the attorney had been binge-drinking alcohol when the attorney's former wife came to his house to pick up their daughter. At some point, the attorney pointed a gun at his former wife and made threatening statements. The former wife and three adult children exited the attorney's home unharmed. Several police officers responded to the attorney's house and asked the attorney to come outside. The attorney was uncooperative and resistant to multiple requests by the police. A special operations team of police then responded to the scene, and a standoff lasted for several hours. Eventually, the special operations team used tear gas to force the attorney out of his home. The attorney slurred his speech, had a heavy odor of alcohol, and was unsteady on his feet. Id. ¶ 5, 395 P.3d at 554. The attorney was charged and pled guilty to two felony charges. As a result of this incident, the attorney stopped drinking, attended AA, obtained a sponsor from AA, and sought professional treatment. The attorney was suffering from PTSD and other mental health issues at the time of the incident. Id. ¶ 9, 395 P.3d at 555. The attorney was in full remission regarding his alcohol addiction during his disciplinary proceedings. Despite the mitigating factors and his conduct being an isolated incident, the Court suspended the attorney for two years from the date of his interim suspension. Id. ¶ 35, 395 P.3d at 560.

¶30 Similarly, in State ex rel. Oklahoma Bar Association v. Conrady, 2012 OK 29275 P.3d 133Id. ¶ 3, 275 P.3d at 135. The attorney pled guilty to six different felony counts. He received a deferred sentence of five years in his criminal matter. Id. ¶ 4, 275 P.3d at 135. More than one year after the incident, he delivered multiple e-mails to his former girlfriend that were offensive and demeaning. In considering the appropriate discipline, this Court noted that the attorney's intentional firing of multiple rounds from a high-caliber firearm "was reckless and potentially deadly." Id. ¶ 18, 275 P.3d at 139. The Court suspended the attorney for two years and one day. Id. ¶ 19, 275 P.3d at 140.

¶31 This matter involved an isolated incident, and Wiehl has been remorseful and dedicated to recovery. Also, a question remains as to whether Wiehl's conduct was exacerbated due to his alleged involuntarily intoxication with PCP. However, we will not overlook the fact that Wiehl admittedly consumed alcohol to excess the night of the incident. His actions of going to a bar and binge-drinking alcohol led him to spit, headbutt, kick, and punch multiple police officers, EMSA personnel, medical staff, security guards, and patrons over a period of several hours. The fact that none of the individuals he battered that night sustained major injuries does not take away from Wiehl's dangerous behavior. Wiehl also threatened to kill, berated, cursed, and verbally abused these individuals.

¶32 The Trial Panel's recommendation of a one-year suspension from the date of Wiehl's interim suspension, with an additional two-year deferred suspension, does not impose discipline consistent with the seriousness of Wiehl's conduct. We also do not think that a two-year conditional deferred suspension would be effective in this situation, especially since Wiehl resides in New York. In State ex rel. Oklahoma Bar Association v. Elsey, the issue before this Court was whether the attorney fully complied with the requirements of his probation. 2023 OK 75Id. ¶ 7. For example, the attorney could not meet in person or attend AA and LHL meetings with his sponsor. Id. ¶ 8. With Wiehl living out of state, the same issues with supervision would arise as discussed in Elsey, and the purposes of a conditional suspension would be thwarted.

¶33 Instead, Wiehl's violent behavior requires stricter discipline to protect the integrity of the judicial system and the reputation of the OBA. Wiehl's actions gained widespread media attention on both the local and national levels. While Wiehl has made commendable strides in his recovery, his effective return to practice would undermine public trust in the legal profession. We find that the appropriate discipline is the same as imposed in Conrady and suspend Wiehl for two years and one day from the effective date of this opinion.

VI. CONCLUSION

¶34 Wiehl's actions provide clear and convincing evidence of engaging in conduct that reflects adversely on the legal profession in violation of his professional duties pursuant to ORPC Rule 8.4 and RGDP Rule 1.3. The conduct serves as a basis for imposing discipline, which we must determine. We appreciate Wiehl's remorse regarding his actions, and we are mindful of Wiehl's mitigating circumstances, specifically his efforts to address his unhealthy relationship with alcohol. This is the right course for him to take. Considering the Hastings and Conrady cases, we conclude the Trial Panel's recommendation is not appropriate for this matter. This Court suspends Wiehl from the practice of law for two years and one day from the effective date of this opinion.

¶35 The OBA filed an application to assess the costs of the disciplinary proceedings in the amount of $3,112.50. Wiehl did not file an objection to this application. These costs include Trial Panel expenses and costs associated with the record, and each is permissible. See RGDP Rule 6.16. This Court orders Wiehl to pay costs in the amount of $3,112.50 within ninety days of the effective date of this opinion.

THE RESPONDENT IS SUSPENDED FOR TWO 
YEARS AND ONE DAY FROM THE DATE OF 
THIS OPINION AND ORDERED TO PAY COSTS.

ALL JUSTICES CONCUR.

FOOTNOTES

Many kinds of illegal conduct reflect adversely on fitness to practice law, such as offenses involving fraud and the offense of willful failure to file an income tax return. However, some kinds of offense carry no such implication. Traditionally, the distinction was drawn in terms of offenses involving "moral turpitude." That concept can be construed to include offenses concerning some matters of personal morality, such as adultery and comparable offenses, that have no specific connection to fitness for the practice of law. Although a lawyer is personally answerable to the entire criminal law, a lawyer should be professionally answerable only for offenses that indicate lack of those characteristics relevant to law practice. Offenses involving violence, dishonesty, breach of trust, or serious interference with the administration of justice are in that category. A pattern of repeated offenses, even ones of minor significance when considered separately, can indicate indifference to legal obligation.

It is professional misconduct for a lawyer to:
. . . .
(b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects[.]

 provides:

The commission by any lawyer of any act contrary to prescribed standards of conduct, whether in the course of his professional capacity, or otherwise, which act would reasonably be found to bring discredit upon the legal profession, shall be grounds for disciplinary action, whether or not the act is a felony or misdemeanor, or a crime at all. Conviction in a criminal proceeding is not a condition precedent to the imposition of discipline.